MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. P. J. HAWLEY.

Decided December 4, 1909.

**1.—Railroad—Personal Injury—Liability—Federal or State Laws—Pleading.**

In a suit by an employee against a railroad company for damages for personal injuries, petition considered and held to show affirmatively that at the time plaintiff was injured the defendant was engaged in intrastate commerce, and therefore said petition was not subject to exception on the ground that it did not sufficiently appear from the allegations of the same whether the liability of the defendant was regulated and governed by the Act of Congress or the laws of Texas concerning the liability of railroad companies to employees.

**2.—Same—Pleading.**

When the petition in a suit by an employee against a railroad company for personal injuries does not disclose that the action arises under the Federal statute concerning the liability of railroad companies to their employees, then it must be considered that he is not seeking recovery for injuries received while engaged in interstate commerce, and the sufficiency of his pleading must be tested by the State law.

**3.—Same—Facts within Knowledge of Defendant.**

Under our practice, when a pleader alleges that certain facts are peculiarly within the knowledge of the defendant, and that the pleader has no knowledge of the same, he is relieved from the necessity of using that degree of accuracy and certainty which would be required were the facts known to him.

**4.—Charge—Uncontroverted Evidence.**

Where there is no conflict in the evidence, there is no disputed fact to be determined by the jury, and hence in such case there can be no charge upon the weight of the evidence. Charge considered, and held under the undisputed facts, not to be a charge upon the weight of the evidence, but a statement of the legal effect of the uncontroverted evidence.

**5.—Contributory Negligence—Brakeman—Selection of Dangerous Method.**

Where the uncontroverted evidence showed that it was not only customary for a brakeman to board a moving train at the time and place when and where he attempted it, but that his duties required him to do so, when he fell and was hurt, the rule that a servant is guilty of contributory negligence when he selects a dangerous instead of a safe way of doing his master's work, does not apply. It is only when the way chosen by the servant is obviously unsafe or the danger thereof known to the servant, that said rule can be applied.

**6.—Same—Assumed Risk.**

In the performance of the duties required of him a servant does not assume a danger not obvious or of which he was ignorant, or which arose from the failure of the master to do his duty, unless the servant knew of the failure and attendant risk or in the ordinary discharge of his duty he must necessarily have acquired the knowledge. A servant has the right to assume that the appliances furnished him by the master for use are reasonably safe, and is not required to use ordinary care to see whether the master has performed the duty.

**7.—Master and Servant—Personal Injury—Agreement to Give Notice.**

The filing of a suit for damages for personal injuries within the time stipulated, is a sufficient compliance with an agreement on the part of a servant to give the master notice within a certain number of days of the time, place, extent and circumstances of the injuries.

**8.—Pleading—Contributory Negligence.**

It was not error to refuse a charge requested by the defendant to the effect that defendant could not be held liable for any damages for prolonged disability or increased suffering brought about by plaintiff's own negligence, when defendant plead a different specific act of contributory negligence and did not plead contributory negligence in the respect set out in said charge.

**9.—Personal Injuries—Verdict not Excessive.**

Evidence as to personal injuries considered and held to support a verdict for $14,583.

Appeal from the District Court of Grayson County. Tried below before Hon. J. M. Pearson.

*Coke, Miller & Coke* and *Head, Dillard, Smith & Head,* for appellant.

*J. H. Wood* and *Jas. P. Haven,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—On April 30, 1908, appellee was a brakeman on one of appellant's freight trains between Dallas, Texas, and Denton, Texas, when he was caused to fall from one of the cars incorporated in the train by the giving way of an insecurely fastened hand-hold on said car. To recover for serious injuries sustained in the fall he brought this suit, and upon trial before a jury a verdict and judgment was rendered in his favor for the sum of $14,583, from which appellant has perfected an appeal to this court.

Plaintiff alleged, in substance, so far as is necessary to state, that the defendant was a corporation, duly incorporated under and by virtue of the laws of the State of Texas, with its principal office in the city of Dallas, Dallas County, Texas. That all of its lines of railway are situated within the limits of said State of Texas, and it operates and propels all of its trains within the limits of said State of Texas, and owns, controls and operates no lines of railway or railway cars outside of said State of Texas. That J. J. Carson is the local agent of said defendant representing it in Grayson County, and resides in the city of Sherman in said State and county. That heretofore, to wit, on April 30, 1908, plaintiff was in the employment of the defendant in the capacity of a brakeman on its freight trains. That on said date he was in the due performance of his duties as a brakeman on one of defendant's freight trains, and that while said freight train was passing through Denton County, and was in said county of Denton, and while it was in motion going at the rate of about thirty miles an hour, it became necessary for plaintiff, in the performance of his duties, to pass along said train going to the rear thereof; that while undertaking to climb from a flat-car to a box-car the hand-hold he used for the purpose of ascending to the top of said car pulled loose and gave way, thereby throwing plaintiff with great force and violence upon the ground, inflicting upon him serious, painful and permanent injuries. That at the time plaintiff was injured his run was between the city of Dallas, Dallas County, Texas, a terminal at one end, and the city of Denton, Denton County, Texas, a terminal at the other end, said cities being about thirty-five miles apart, said railway connecting said points and being entirely within the State of Texas. That the train that plaintiff was working on at the time he was injured incorporated the car from which he fell as aforesaid in said train at said city of Dallas, and took the same out of said train and left it at said city of Denton. Plaintiff does not know what point was the final destination of said car, and he has no information in his possession by which he can get said information, but that said information is within the peculiar knowledge of the defendant, as it is the duty and custom of the defendant to keep a record of such matters; the record is, however, not accessible to plaintiff. That the car from which plaintiff fell, plaintiff is informed and believes and upon such information and belief states the fact to be, was car S. R. L. No. 4219. That if plaintiff is mistaken in the name and number of the car, then he says that it was the same car being hauled by said train at said time, and between said points as aforesaid; and the name and number of said car is within the peculiar knowledge of said defendant, because it is its duty and custom to keep a record of all such matters. That the defendant was then and there guilty of gross carelessness and negligence in this: That the wood of the box-car where said hand-hold was fastened was old, worn, rotten, soft, dangerous and unfit for use; that the lag screws and bolts which held said hand-hold in place were old, worn, rusty, the threads thereof filled with wood and worn off; that the same were placed in a crack between two planks on said car, and said planks had separated;

that by reason of all of which said hand-hold was caused to come loose and throw plaintiff to the ground, and injured him, setting forth the nature of his injuries. That all of said facts were well known to the defendant at and prior to the time plaintiff received his injuries, or could have been known by the use of ordinary care, but was unknown to plaintiff.

The defendant plead· general and special demurrers to plaintiff's petition, a general denial, and that plaintiff was guilty of contributory negligence in unnecessarily attempting to climb upon the car while the train was in motion at the time he was injured. The special demurrers challenged the sufficiency of plaintiff's petition on the ground that "it does not show whether at the time plaintiff was injured defendant was or was not a common carrier by railroad engaging in commerce between two or more of the several States or Territories of the United States;" and on the ground that "the facts alleged do not show whether the liability of defendant is or is not regulated by the Act of Congress passed April 22, 1908, entitled 'An Act Relating to the Liability of Common Carriers by Railroad to their Employes in Certain Cases.'"

These demurrers were overruled, and this action of the court is made the basis of appellant's first and second assignments of error. The proposition under the assignments is as follows: "In as much as, if the defendant was a railroad engaging in interstate commerce and plaintiff was in its employ in connection therewith at the time he was injured, his cause of action and defendant's liability would be governed by and founded upon the Act of Congress passed April 22, 1908, entitled, 'An Act Relating to the Liability of Common Carriers by Railroad to their Employes in Certain Cases;' while if defendant was not so engaged, the rights of the parties would be governed. by and founded upon the fellow-servant and assumption-of-risk statutes and other laws of the State of Texas, the defendant by special exception had the right to require plaintiff to allege in his petition such facts as would enable ·it to determine which of these laws applied." We think the assignment should be overruled. The allegations of plaintiff's petition affirmatively show that at the time he received his injury the defendant was engaged in intrastate commerce and not interstate commerce; therefore, any idea that the liability of the defendant for the injury inflicted upon plaintiff was regulated and governed by the Act of Congress referred to, is excluded, and the applicability of the laws of Texas to the facts as fixing and governing the rights of the parties is made certain. As has been seen, plaintiff alleged that the defendant owned and operated various lines of railroad for the carriage of passengers and freight; that all of its lines of railway are situated within the limits of the State of Texas; that it operates and propels all of its trains within the limits of said State and owns, controls and operates no lines of railway or railway cars outside of the State of Texas; that at the time plaintiff was injured, his run was between the city of Dallas, Dallas County, Texas, a .terminal at one end, and the city of Denton, Denton County, Texas, a terminal at the other end; that the car from which he fell was incorporated in the train on

which he was working at said city of Dallas, and taken out and left at the city of Denton.

However, if the petition is not subject to the foregoing construction, still it is not demurrable, we think, for the reasons claimed. If plaintiff's petition does not disclose that the action arises under the Federal statute mentioned, and it does not, then it must be said that he is not seeking to recover for an injury received through the negligence of defendant while the defendant was engaged in interstate commerce, and the sufficiency of his pleading must be tested by the State law, the provisions of said statute not being involved. We have found no case in which the point has been decided, but Mr. Thornton takes the above view of the question, as expressed in section 107 of his recent publication, entitled, "A Treatise on the Federal Employers' Liability and Safety Appliance Act," and we think it the correct one.

Again, we think the allegations of the petition are to the effect that whether defendant was engaged in interstate commerce was a matter about which plaintiff had no knowledge or information, but was a fact peculiarly within the knowledge of the defendant. In such a case the pleader, under our practice, is relieved from the necessity of using that degree of accuracy and certainty which would be required were the facts known to him. Townes on Texas Pleading, p. 291. Texas & P. Railway Co. v. Easton, 2 Texas Civ. App., 380, 21 S. W., 575, was a suit for personal injuries, and the petition did not allege the particular agent or employe of the company guilty of the negligence causing such injuries, and did not state the specific act of negligence complained of. In holding that the petition was not obnoxious to the special exceptions addressed to it on account of the omissions stated, the court said: "The facts alleged in the petition justify the inference that the accident described was due to the negligence of the defendant. The evidence developed on the trial showed that this negligence was to be ascribed to the engineer in charge of the defendant's train. This fact, however, the defendant, in framing his petition, could not be supposed to know. It was, on the contrary, a fact peculiarly within the knowledge of the defendant. This peculiar knowledge, together with the absence of information on the part of plaintiff as to the special source of the injuries complained of, is, we think, naturally to be inferred from the averments of the petition. Under such circumstances, the pleader is not held to the specific averments, the absence of which appellant complains of. Gulf, C. & S. F. Ry. v. Smith, 74 Texas, 276."

But again, there is another reason, in our opinion, why the assignment should not be sustained. The evidence introduced in the trial of the case discloses that appellant sustained no injury on account of the ruling to which said assignment is addressed. The uncontroverted evidence shows that the car from which appellee fell was incorporated in the train on which he was working at Dallas, Texas, and set out at Denton, Texas; that appellant's line of railroad does not extend beyond the boundary line of this State, and that it does not operate any trains outside of the State; and there is no testimony whatever tending to show that said train or any car in it or any item of freight contained in any car forming a part of said train was destined or carried to a

point outside of this State. It does not, therefore, appear that the defendant was engaged in interstate commerce, or that the Act of Congress mentioned was in any manner involved; hence, the defendant suffered no injury by the court's ruling.

In the fifth paragraph of his charge the court instructed the jury as follows: "The undisputed facts in this case show that on April 30, 1908, plaintiff was in the employment of the defendant on one of its freight trains running between Dallas, Texas, and Denton, Texas, in the capacity of a brakeman; that on said date, while between the stations of Corinth and Denton, and while he was climbing up the ladder of a car while the train was in motion, the hand-hold on the top of the car gave way and one end of it pulled loose from the car and he was thrown upon the ground and injured. That the handhold was fastened to the car with lag screws, and the wood of the car where the lag screws were fastened in the end of the hand-hold that came loose was soft and rotten." The correctness of this charge is called into question by appellant's third assignment of error, and the assertion made that the undisputed evidence neither showed that "while he (plaintiff) was climbing up the ladder of a car while the train was in motion, the hand-hold on the top of the car gave way and one end of it pulled loose from the car and he was thrown upon the ground and injured," nor that "the wood of the car, where the lag screw was fastened in the end of the hand-hold that came loose, was soft and rotten," and that to so charge was an invasion by the court of the province of the jury. The testimony relating to the question is that of the plaintiff and his witness, Mauzy. Plaintiff testified: "I was employed by the M., K. & T. Railway Company of Texas as brakeman; my run was between Denton and Dallas on that local. I was swing brakeman. We were coming from Dallas to Denton. Something happened to me about half-way between Corinth and Denton. Corinth is a station between Dallas and Denton. I was going to my duties as swing brakeman. There was a Swift refrigerator car in the train, and it was necessary to get on the flat-car and to go up; I had to go on a ladder, and when I got to the top the hand-hold gave way and dropped me on the outside of the track. I remember falling, but more than that I don't know. I was going back towards the caboose. There was a flat-car in front of the Swift's refrigerator. The train was going north, or we called it north—a little northwest. I was undertaking to go from the flat-car up on top of Swift's refrigerator car. It was a box-car. This ladder is on the end of the car, between the two cars. The object of that ladder is for the trainmen in the performance of their duties in going up and down over the train. I was engaged in performing my duties in undertaking to climb that ladder, and the hand-hold that pulled loose was on top of the car. I don't remember anything except the fall. The inside end of the hand-hold pulled out. When I fell it seemed to me my body went right around the end of the car to the outside of the track. It was the inside end of the hand-hold that pulled out, and I swerved around to the outside or side of the car. I was not able to hold on. There was nothing to hold on to. When it pulled out I jumped around against the end

of the car and was thrown to the ground. The car was running in the neighborhood of twenty-five miles an hour."

Mauzy testified: "I was a brakeman on the M., K. & T. Railway Company of Texas on April 30, 1908, on train No. 722 from south yards to Dallas, and No. 714 from Dallas to Denton. O. W. Taylor was head brakeman and P. J. Hawley was swing brakeman. . . . The last time I saw plaintiff on this trip was at Corinth, Texas. The next time I saw him was when we picked him up, after we returned for him with the engine. . . . Plaintiff was lying on his face in an unconscious condition. He was lying about 25 feet from the track and the ground was torn up where he had fallen. . . . Car S. R. L. No. 4219 that I examined was in the train at the time brakeman Hawley was injured. . . . I examined said car about three hours after plaintiff was hurt. The car was Swift's Refrigerator Line No. 4219, and on this car is an end ladder. I found the handhold to be loose at one end on the top of this car. It is a refrigerator car. Except for the one defect—the hand-hold being loose—the car was apparently in good order. I found the hand-hold loose at one end and hanging over the side of the car. It was originally fastened to the car by two lag screws that extend through the hand-hold into a sill in the end of the car. The hand-hold was loose at one end; the screw was gone entirely from the end that was loose; the other screw was holding. The roof board, which covers the sill into which these screws extend, was in an aged and rotten condition; by aged and rotten, I mean decayed and in a soft, crumbly condition. We went back to see how brakeman Hawley happened to fall off the train, and in going up to the end of this car S. R. L. No. 4219, I found the hand-hold loose. The roof board over the sill was in a rotten, decayed condition. The lag screws, which keep the hand-hold in position, extend through the roof board into the sill. The lag screw was gone from the west end of the handhold, and left it hanging over the end of the car." This evidence was not controverted, and fully authorized, we think, the charge in the very language in which it was given. It was not, under the undisputed facts, a charge upon the weight of the evidence, but a statement of the legal effect of the uncontroverted evidence. Where there is no conflict in the evidence, there is no disputed fact to be determined by the jury, and hence in such a case there can be no charge upon the weight of the evidence. Authorities need not be cited to sustain this proposition. The language of the court in the cause of Houston, E. & W. T. Ry. Co. v. Runnels, 92 Texas, 305, cited to support the contention of appellant, to the effect that it is the province of the jury to pass upon the credibility of the witnesses, and they may disregard the testimony of a witness who has neither been impeached nor contradicted if they believe his statements untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable, can have no application in this case. In that case there was a sharp conflict in the evidence, and the plaintiff relied solely upon his own testimony for a recovery. The trial court instructed the jury to the effect that if they should find that there was a conflict in the evidence it would be their duty to

reconcile such conflict, if they could, so as to give credit to the whole of the testimony; but that if they should be unable to reconcile such testimony, then they must decide for themselves as to which testimony they would believe; and that in determining what weight they should give the testimony of any witness who had testified in the case, they might consider his age and intelligence, his manner of testifying, apparent prejudice, etc., and give such weight and credit to the witness as they should see fit. The court held that this charge, wherein it authorized the jury, in determining the credibility of the witnesses and the weight to be given to their testimony, to take into consideration their manner in testifying, apparent prejudice, etc., was a comment on the weight of the evidence, and of course erroneous. And so decided was the conflict in the evidence the Supreme Court was constrained to say that "the law does not impose upon a jury the duty of reconciling a conflict in the testimony of witnesses," that "it is impossible to reconcile positive and unequivocal affirmative and negative evidence—that a real conflict between witnesses can only be disposed of by discarding the testimony of one side of the issue."

In the case at bar plaintiff did not rely solely upon his own testimony for a recovery, and no such charge and no such conflicting evidence was or is involved. The positive testimony of the plaintiff to the fact that he was caused to fall by the giving way of the handhold on the car from which he fell is strongly corroborated by the testimony of the witness Mauzy. It is true, Mauzy did not see the plaintiff fall from the car, but his testimony presents such a state of facts and circumstances with reference to the place where he found plaintiff after the accident, and the condition in which he found him, and the condition in which he found the handhold on the car, that we think it cannot be seriously doubted that it not only corroborated the plaintiff's testimony but is sufficient alone, at least in the absence of contradictory evidence, to authorize a finding that plaintiff was caused to fall from the car by reason of an insecurely fastened hand-hold. The fact that the evidence fails to show that the sill, underneath the "roof board" and into which the screw of the hand-hold penetrated, was soft and rotten, is, we think, of so little consequence, so lacking in probative force, it can not be said that because thereof the charge under consideration was upon the weight of the evidence. There is no testimony showing to what depth or extent the screw penetrated the sill, or that with the ordinary and customary use of the hand-hold it was sufficient without regard to the rotten condition of the roof board for the safety of appellant's employes who in the discharge of their duties were required to use it.

Appellant's first proposition under its fourth assignment, to the effect that the court erred in the sixth paragraph of his charge in assuming that the "wood of the car into which the lag screw was fastened was in a rotten and soft condition," has been disposed of in the discussion of its third assignment; and the second proposition, that "the charge was erroneous in that it told the jury that plaintiff would not be charged with notice of the condition of the hand-hold unless he either had actual knowledge or must have necessarily obtained

such knowledge in the ordinary discharge of his duties," can not be maintained under the decisions of our Supreme Court.

The sixth assignment complains of the court's refusal to give the following special charge requested by appellant: "If you believe from the evidence that before defendant's train was put in motion at Corinth, that plaintiff had ample time to go with safety to his place in the caboose on said train, but that instead of so doing he waited until said train started and boarded the freight cars of said train, intending to go over them back to said caboose, and that in boarding said moving train and going over said cars to said caboose plaintiff chose a more dangerous route to said caboose, then you are instructed that plaintiff was guilty of contributory negligence in selecting said dangerous route, and that he can not recover in this case, you will, therefore, if you so find, find for defendant." There was no error in refusing this charge. The rule that the servant, having a safe way of doing the master's business, voluntarily chooses a dangerous way and thereby sustains an injury is, as a matter of law, guilty of contributory negligence, and can not recover for such injury, does not, in our opinion, apply to this character of case. The uncontradicted evidence shows that it was not only proper for the appellee to board the train where he attempted it, but that it was customary to do so; that he was swing brakeman, and his duties called him to the middle of the train; that appellant and its conductors required him, especially when the train was not standing at stations, to ride out there, and that it was his duty to get on the train at the time and place he did get on when he fell and was hurt.

But if the nature of appellee's duties and the place and manner of their performance did not render inapplicable the doctrine invoked by the special charge, then said charge was defective and should not have been given, because it ignored an essential element of a correct charge on the subject, namely, obviousness or knowledge by appellee of the danger encountered by him. It is only when the way chosen is obviously unsafe or the danger thereof known to the servant, that the rule invoked can be applied. (Bonnet v. Galveston, H. & S. A. Ry., 89 Texas, 72; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 700; id., 78 Texas, 439; Missouri, K. & T. Ry. Co. v. Gray, 120 S. W., 527; Galveston, H. & S. A. Ry. Co. v. Schuessler, 120 S. W., 1147.) Again, there was no evidence tending to show that the defective or dangerous condition of the handhold in question was obvious, or that appellee had any knowledge of its defective or dangerous condition or in the ordinary discharge of his duties must have acquired knowledge thereof until he was caused to fall from the car by reason of such defect, and for that reason the special charge, even if it was correctly drawn, should not have been given.

Nor do we think the court erred in failing to charge the jury, as requested by appellant, to the effect that if there was a safe route plaintiff could have selected back to the caboose while the train was standing at Corinth, but that instead of selecting such route in going to the caboose he waited until the train started and boarded one of the cars in the train, intending to go back over the cars to the caboose, and that by reason of the hand-hold giving way he fell, and

that in going over said cars he pursued a more dangerous route than if he had proceeded to the caboose while the train was standing, then plaintiff assumed the risk of the route so selected by him, and to return a verdict for the defendant. In the discharge of duties required of him appellee was compelled to pass along and be upon the top of the cars, and it was not only customary, but it was his duty, as he testifies without contradiction, to board the train at the time and place he attempted to do so. The special charge, the refusal of which is complained of in the assignment, charges appellee with the assumption of the risk of the route selected by him regardless of whether the route was obviously dangerous or that he was ignorant of the danger, or that the way was rendered dangerous by the negligence of the appellant in permitting the handhold which gave way and caused his injuries to become and remain defective and unsafe for the use intended. This is not the law, as we understand it. Appellee did not assume, in the performance of the duties required of him, a danger not obvious or of which he was ignorant or which arose from the failure of appellant to do its duty, unless he knew of the failure and attendant risk or in the ordinary discharge of his own duty he must necessarily have acquired the knowledge. He had the right to assume that the hand-hold upon the car provided for his use was reasonably safe, and was not required to use ordinary care to see whether appellant had performed its duty in this respect. (Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347; Ft. Worth & R. G. Ry. Co. v. Kime, 21 Texas Civ. App., 271; St. Louis S. W. Ry. Co. v. Schuler, 46 Texas Civ. App., 356, and cases cited above.) Having omitted the essential requirements above referred to, the special charge did not correctly state the law upon the subject to which it related, and there was no error in its refusal. Besides, there was no evidence, we think, that would have justified the conclusion that the defect in the handhold or the danger of using it was obvious, or known to appellee, or that in doing his work he must necessarily have known of it.

There was no error in refusing special charge No. 9, requested by appellant, reciting, in substance, that at the time appellee entered the service of appellant he made a written contract with appellant whereby he agreed that in case he was injured in the performance of any of his duties he would, within ninety days, give notice in writing to defendant's claim agent of the time, place, circumstances of his injury and of the extent of the same, etc., and that appellee did not give such notice within the time stipulated, and therefore he could not recover in this suit. A sufficient reason for the refusal of this charge is, that this suit was filed within ninety days after appellee was injured. The record shows he was injured on the 30th of April, 1908, and this suit was filed and citation issued on the 4th day of May, 1908. (Phillips v. Western U. Tel. Co., 95 Texas, 638.)

Appellant's ninth assignment complains that the court erred in refusing to give its special charge No. 11, which instructed the jury that if they believed from the evidence that plaintiff, after his injury, by his own acts at Wilton, Arkansas, has prolonged his disability or increased his injuries or suffering, and that such acts on his part were under all the circumstances negligent, they could not return a verdict

in favor of plaintiff in any amount as compensation for such prolonged disability or increased injury and suffering, or any diminution of earning capacity, or other pecuniary loss caused by such acts. The court did not err in refusing this charge, because appellant plead, as the specific act of negligence on appellee's part which contributed to his injury, his unnecessary attempt to climb upon the car while the train was in motion at the time he was injured, and did not plead contributory negligence in the respect set out in the charge. Moreover, we are of the opinion the evidence did not call for the charge asked. Freeman v. Puckett, 120 S. W., 514.

It is assigned that the verdict is excessive, and for that reason the trial court erred in overruling appellant's motion for a new trial. We think the verdict very large, but since, in respect to the seriousness of the injuries and extent of the damage sustained, we are unable to distinguish this case from many other cases in this State in which verdicts for similar amounts have been upheld, we are constrained to overrule the assignment. Appellee, at the time he received his injuries, was a young man twenty-six years old, strong and healthy and earning about $100 per month. The evidence was sufficient to warrant the conclusion by the jury that since his injury appellee has been unable to do any physical labor, and that he sustained, by reason of the negligence alleged, a serious injury to the spinal column, which is probably permanent, and which will cause him physical and mental pain, and very largely diminish his capacity to labor and earn money in the future. We can not say, in this state of the record, that the verdict appears to be palpably excessive or so large as to manifest passion or prejudice on the part of the city. The assignment is not, therefore, sustained.

None of the assignments point out any error requiring a reversal of the case. The evidence is sufficient to sustain the material allegations of the petition, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.