GALVESTON, H. & S. A. RY. CO. v. COKER.†

(Court of Civil Appeals of Texas. Feb. 11, 1911. Rehearing Denied March 4, 1911.)

1. PROCESS (§ 163*)—CITATION—AMENDMENT.

Where a certified copy of plaintiff's original petition was delivered to defendant at the time of service of citation, and the petition showed that it was filed in the Fifteenth judicial district, which district was the only one in which the court convened in G. county on the date the citation required defendant to appear and answer, the fact that the citation required defendant to appear and answer before "the court of G. county, Tex.," did not render it fatally defective, but the court properly granted plaintiff leave to amend it so as to require appearance before the Fifteenth judicial district court of G. county, on a motion for such amendment heard prior to the hearing of a motion to quash the citation and service.

[Ed. Note.—For other cases, see Process, Cent. Dig. §§ 224–238; Dec. Dig. § 163.*]

2. PROCESS (§ 163*)—AMENDMENT—TIME.

Where a defect in the citation is but a clerical error, it may be cured by authorized amendment at any time before trial, especially when no injury is shown to have accrued to the opposite party.

[Ed. Note.—For other cases, see Process, Cent. Dig. §§ 224–238; Dec. Dig. § 163.*]

3. DAMAGES (§ 216*)—INSTRUCTIONS—APPLICABILITY TO ISSUES AND EVIDENCE.

Where, in an action for injuries to a passenger, the petition charged that, at the time of the accident, plaintiff was thrown with great violence against the seats and floor of the coach, sustaining painful and serious injuries to the abdomen, resulting in a tearing and bruising of the intestines and a protrusion thereof, and there was evidence that plaintiff had a hernia prior to the accident, and that after his injury

the hernia was more serious, an instruction on the aggravation of plaintiff's previous condition was proper.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 548–555; Dec. Dig. § 216.*]

4. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVENESS.

Plaintiff, a passenger, was injured, in a collision occurring through defendant's negligence. Plaintiff was thrown against the seats and floor of the coach, causing serious traumatism and resulting in aggravating a prior hernia. There was also evidence of injury to the back and that this would result in stiffness of the back. Held, that a verdict allowing plaintiff $8,000 was not so excessive as to show passion or prejudice.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 375; Dec. Dig. § 132.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by J. W. Coker against the Galveston, Harrisburg & San Antonio Railway Company and another. Judgment for plaintiff, and defendant named appeals. Affirmed.

Baker, Botts, Parker & Garwood and Head, Smith, Hare & Head, for appellant. Jas. P. Haven and J. H. Wood, for appellee.

BOOKHOUT, J. On August 31, 1909, J. W. Coker, as plaintiff, filed suit in the Fifteenth judicial district court of Grayson county, Tex., against the Galveston, Harrisburg & San Antonio and the Houston & Texas Central Railroad Companies, as defendants, to recover damages on account of personal injuries received by him while a passenger on one of defendant's trains on September 2, 1907, between Galveston and Houston. While upon said train as a passenger, as aforesaid, he charges that on account of the gross negligence of the defendant his train was caused to collide with another train, causing him to be thrown against the seats, floor, etc., of the coach and sustain serious and permanent injuries. Defendant answered by general demurrer and general denial and plea of contributory negligence. The cause was tried on December 10, 1909, and a judgment and verdict in favor of plaintiff in the sum of $8,000 was recovered. Defendant duly filed its motion for a new trial, which was overruled, whereupon' defendant gave notice of appeal, filed its bond, and duly perfected the appeal.

The first and second assignments are grouped, and are as follows: "First. The court erred in overruling defendant's motion to quash citation. Second. The court erred in granting plaintiff's motion to amend citation."

It is contended that a citation which fails to contain the name of the court in which defendant was required to appear and answer did not comply with the requirements of the statutes, and, defendant having interposed a timely objection, the same should have been sustained; that neither the origi-

nal citation or the copy thereof served upon defendants shows in what court said cause is pending, nor did the copy thereof served upon defendant show in what court the defendant is required to appear. There were two defendants in the suit, the Houston & Texas Central Railroad Company and the Galveston, Harrisburg & San Antonio Railway Company. The first-named defendant was served through its local agent, in Grayson county, Tex. The citation served on that defendant required it to appear before the Fifteenth judicial district court of Grayson county, Tex. The citation and copy to the last-named defendant omitted the words "Fifteenth judicial district." The return of the officer showed that a certified copy of plaintiff's original petition was delivered to the defendant the Galveston, Harrisburg & San Antonio Railway Company at the same time of the service of the citation; the citation having been served in Harris county, Tex. The original petition set forth that the suit was filed in the Fifteenth judicial district. The Fifteenth judicial district was the only one that convened in Grayson county on the first Monday in October, 1909, the date said citation required said defendants to appear and answer.

Upon the presentation of the motion of the defendant to quash the citation, the plaintiff filed a motion to have the citation corrected. Before the action of the court upon the motion to quash citation came on to be considered, the motion of plaintiff for an order authorizing and requiring the clerk to amend said citation was, by the court, sustained, and thereupon the clerk, under the orders of the court, proceeded to amend, and did amend both said original citation and the copy thereof served on said defendant by interlining the words, "Fifteenth judicial," before the words "district court," in the following part of said citations, "To appear before the district court of Grayson county," so that after said correction the same read, "To appear before the Fifteenth judicial district court of Grayson county." After said correction the court overruled defendant's motion to quash the citation and service.

There was no error in this action of the court. It being shown that a certified copy of plaintiff's original petition was delivered to the defendant at the time the citation was served upon it, and said original petition showing that the suit was filed in the Fifteenth district court, defendant was thereby notified of the court in which it was required to appear and answer. That was the only court that convened at Sherman on the first Monday in October, the date the defendant was cited to appear, and defendant was not misled as to the court in which it was required to appear and answer. The

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

mistake in said citation in not stating in which district court in Grayson county the suit was filed was purely a clerical error, and the court was authorized to permit its amendment at any time before trial; especially when no injury is shown to have accrued to the opposite party. Cartwright v. Chabert, 3 Tex. 261, 49 Am. Dec. 742; Austin & Clapp v. Jordan, 5 Tex. 130; Andrews v. Ennis, 16 Tex. 46; Irvin v. Bevil, 80 Tex. 339, 16 S. W. 23.

Error is assigned to the sixth paragraph of the court's charge, reading as follows: "In this connection you are instructed that if you believe from the evidence plaintiff had received an injury or injuries prior to the injuries he received, if any, on the occasion in question, you cannot allow him anything by reason of said former injuries, by reason of any physical or mental suffering, if any, had by him in the past, or by reason of any physical or mental suffering you may believe by the evidence will be occasioned him in the future, or by reason of any loss of time, or of any value for diminished capacity to labor and earn money in the future, which you may believe from the evidence has resulted or will result by reason of any former injury or injuries received by plaintiff; if, however, you believe from the evidence that plaintiff had received a former injury or injuries, but you further believe from the evidence that said former injury or injuries were aggravated on said occasion, then you will allow plaintiff for those items of damages above enumerated which you believe from the evidence directly resulted from such aggravation, if any."

The proposition presented is that neither the pleading nor the proof raises the issue of the aggravation of plaintiff's injuries. Plaintiff's contention was that he had not been injured prior to the time of the wreck, and that all injuries from which he was suffering at the time of the trial were caused on account of the wreck. It was therefore error for the court to instruct the jury upon this question of aggravation.

The petition alleged, among other injuries, which he sustained, that plaintiff "was thrown with great force, and violence, by reason of which he received serious, painful, and permanent injuries. Said injuries consisting of the wounding, contusing, and mashing and cutting of his abdomen, and the walls, linings, and partitions thereof, and the tearing and bruising of the entrails and the protrusion thereof."

The plaintiff testified as follows: "I also sustained a rupture or hernia, as doctors call it, right down at the lower part of my bowels. A rupture is a breaking of the walls of the abdomen. The break seems to be a circle—circular, I presume about an inch in diameter or something like that. I wear a truss. My entrails or viscera pass through here on the outside to a great extent if I don't have a truss on. They have pushed through lots of times. My bowels have protruded from the cavity. It protrudes to the extent that it comes down in the scrotum; hasn't gotten back. The rupture is above the scrotum. Of course, when it comes down in the scrotum—when it comes out it makes a bulge there. The bulge would be as large as a large size hen egg, possibly a little larger. I should say that it is painful. It is very painful. It seems that that will protrude out sometimes under the truss; truss isn't able all the time to hold it up; and whenever that protrudes the pressure of what we call the water pad of the truss, it presses so severely on it it causes me to have colic, and just cramps me nearly to death. It is very painful when it protrudes. As long as it stays inside, it doesn't give me much pain, but whenever it protrudes it is almost like death, seems to me like. I did not have this rupture before this wreck. I noticed it pretty soon afterwards; felt a kind of burning sensation in my bowels there. I noticed it that same night before I left the wreck." Plaintiff further testified: "I am 45 years old. I was 43 years old when I got hurt the same day. I was 43 years old on the day I got hurt. Prior to the time I got hurt, I was in perfect health, as I thought. I was strong and able to do any kind of work. I judge I would weigh about 175 or 180 pounds at that time. I discovered the symptoms of my hernia right there then. My hernia is on my right side."

Dr. C. E. Schenck, a witness for defendant, testified as follows: "He also had a hernia of the right inguinal region. I do not know how long he had had that hernia. He told me that the hernia was larger than it was before the time he was in the wreck, and it had been enlarged since then. He was wearing a truss when I saw him. He took off the truss. He told me that the hernia was now larger than it was previous to his injury. If he said anything about how long he had had the hernia, I don't remember as to that. He said something about whether the hernia was older than the accident or not. He spoke, as I stated awhile ago, that the hernia was now larger that it was previous to the injury. The hernia dated back further than that time, of course. The injury had increased the size of the hernia." On cross-examination he testified: "I told Mr. Smith on direct examination that he (appellant) told me that the rupture was very much enlarged by the fall he got in the wreck. He told me that he had the rupture. I am positive of that. I can't be mistaken about that. I am positive about that. He told me it was very much enlarged."

Dr. Neathery, local surgeon for the defendant Houston & Texas Central Railroad Company, codefendant of appellant, was sent to examine the appellee by said company, and testified as to hernia as follows: "I found a right inguinal hernia at that time. At that time the plaintiff said the hernia had exist-

ed about eight years. From the lax condition of the skin and the absence of inflammation, I should judge it was an old hernia. As to how old it was I couldn't tell. You can't tell that. I knew it was not recent; that is, it didn't appear to be recent. He told me he had had it about eight years. He said it was paining him worse since his injury."

The charge of the court complained of under this assignment, in our opinion, was clearly authorized by both the pleadings and evidence and was correct.

Dr. W. B. Loving testified, in behalf of plaintiff: That he was an osteopathic physician and surgeon. That he had examined plaintiff professionally three times. That his first examination was made in the fall of 1908, again in August, 1909, and on November 30, 1909. That he found an unnatural position of the spine. There was a stiffness, a settling together, rather posterior when it ought to be anterior. The spine in the small of the back should spring forward, gradually slope forward. This is the natural position, but in his back it has a tendency to go back the other way, and his hips duck under instead of being prominent behind. That means a stiff back. That condition could be brought about by traumatism. From the history of plaintiff's case and my examination I don't know what was the cause of his condition. There are nerves out of the spinal column and projecting out to the lower extremities, and the settling, pressing down, is sure to press on those nerves and deaden them. That condition could be produced by traumatism. I formed no opinion as to the cause of that condition. Of course, an injury could be the starting point of it, still it could be gotten in almost that condition by occupation, constant sitting in one position. It could be gotten in that condition by sitting in one position. A person that leads sedentary habits, sitting in a chair, in case of bookkeepers and students where they hump up. Speaking of the curved position of the spinal cord, it is a frequent occurrence that those things happen to the spine by means of the long use of it in any particular way. Occupation has a tendency to set it in a certain way. If a man is in the habit of leaning over writing, it quite often happens that the spine becomes curved by that position. If a man would lean over and limp for a couple of years, that might affect the adjustment and position of his spine. As to how long plaintiff's spine had been in that condition, I don't know anything about it. As to what the cause of it is, I don't know." Whereupon plaintiff's counsel asked said witness the following question: "What, in your judgment, is the character of that injury (referring to the spinal column), as to whether it is temporary or permanent?" To which question, at the time it was asked,

defendant objected on the ground that it was irrelevant and immaterial; that the statement of the witness shows he did not know what produced it, and there was no evidence that the railroad had anything to do with it, which objection was, by the court, overruled, and said witness permitted to answer: "I think the condition is really permanent from an ordinary point of view, but I think from an osteopathic viewpoint it could be adjusted eventually. I don't know how long it would take, but without that and that alone it would gradually get worse and may have a disabled condition of the lower extremities." To which action of the court in overruling this objection and admitting said evidence defendant excepted and preserved the ruling in a bill of exception. .

It is insisted that this testimony of the witness is too remote and speculative, that it is an inquiry into a condition not shown to have been caused by defendant, and there is no evidence showing the defendant is responsible for that condition, and the admission of the testimony was misleading and calculated to prejudice the rights of defendant. This contention is not sustained. The evidence to which the objection was made was material and relevant and was properly admitted. The witness was testifying as an expert, and his testimony as such was competent.

It is contended under a proper assignment that the verdict is grossly excessive in amount, and that for this reason the verdict is not supported by the evidence. After a careful consideration of the evidence, we cannot say that the verdict is excessive. It was peculiarly a question for the jury to determine the amount of damage sustained by plaintiff, and, there being no evidence showing that they were influenced by prejudice or passion, we do not feel authorized to disturb their finding.

Finding no reversible error in the record, the judgment is affirmed.