GALVESTON, H. & S. A. RY. CO. et al. v. GIBBONS. (No. 5990.)

(Court of Civil Appeals of Texas. San Antonio. March 13, 1918. Rehearing Denied April 10, 1918.)

1. EVIDENCE ⚙══505—EXPERTS—QUESTIONS OF FACT.

In action against railroad for damages to shipment of horses, it was proper for a witness who had qualified as to his knowledge of the

market and as an expert to testify as to what the market value of the horses would have been at the point of destination if they had been transported in the usual manner and time; such testimony being in respect to a fact.

2. CARRIERS ⊜228(3)—LIVE STOCK—ACTION —EVIDENCE.

In such action, there being evidence that there was, at the destination point, a market for the kind of horses shipped, plaintiff was properly permitted to testify as to what the market value of the horses was in the condition in which they were delivered at that point.

3. CARRIERS ⊜229(2) — LIVE STOCK — DAMAGES.

In such action, the measure of damages was the difference between the value of horses at the point of destination had they been properly and promptly transported and their value as actually delivered.

4. CARRIERS ⊜218(10)—LIVE STOCK—CLAIM OF LOSS.

Filing suit and service of citation in less than 91 days complied with requirement of notice within such time in live stock shipping contract.

5. CARRIERS ⊜219(8) — LIVE STOCK — CLAIM OF LOSS.

Under live stock shipping contract providing for notice only to agent of initial carrier, notice to the initial carrier was notice to connecting carriers, since connecting carriers could not claim benefits of the contract without assuming the burdens arising from it, and, if the shipment was not a through one and each carrier was independent of the other, none but the initial carrier had a contract, and connecting carriers had no right to notice.

6. CARRIERS ⊜228(5)—LIVE STOCK—ACTION —EVIDENCE.

In action for damages to horses shipped, from rough handling and delay, evidence *held* to sustain verdict against initial carrier as well as connecting carriers.

Appeal from Uvalde County Court; Jno. W. Hill, Judge.

Action by G. N. Gibbons against the Galveston, Harrisburg & San Antonio Railway Company and others. From judgment for plaintiff, defendants appeal. Affirmed.

Wilson, Dabney & King, of Houston, W. B. Teagarden, of San Antonio, and George Thompson, of Dallas, for appellants. Baker, Botts, Parker & Garwood, of Houston, and G. B. Fenley and L. Old & T. P. Hull, all of Uvalde, for appellee.

FLY, C. J. This suit was filed in the county court of Uvalde county by appellee against the Galveston, Harrisburg & San Antonio Railway Company, the International & Great Northern Railway Company, James A. Baker, receiver of the last-named company, and the Texas & Pacific Railway Company to recover damages to certain horses shipped from Spofford to Atlanta, Tex. It was alleged that the damages arose from injuries to the animals, due to their being roughly handled and delayed on the way. The International & Great Northern Railway Company alleged that its properties were at the time of shipment and at the time suit was instituted in the hands of Receiver Baker. The other defendant answered that the initial

carrier was the Galveston, Harrisburg & San Antonio Railway Company and set up stipulations in the shipping contract; that the horses were crowded in the cars, large and small animals being mixed together. A stipulation as to notice of the claim in not less than 91 days from date of loss was pleaded. A trial by jury was had, a verdict being instructed in favor of the International & Great Northern Railway Company, and a verdict as against the initial carrier, $250, as against the receiver $225, and as against the Texas & Pacific Railway Company for $25, upon which verdict judgment was accordingly rendered in favor of appellee.

[1] The first assignment of error assails the action of the court in permitting G. N. Gibbons to testify as to the market value of the horses in question at the point of destination at the time they would have arrived, and in the condition in which they should have arrived, if they had been transported in the time and manner that stock is usually transported between the starting point and point of destination. The evidence was assailed on the ground that the witness was not qualified to testify, and that his testimony was an opinion and conclusion of the witness, on a mixed question of law and fact. The witness had qualified as to his knowledge of the market and as an expert, and he was called upon to testify as to a fact. The testimony does not come within the purview of Railway v. Roberts, 101 Tex. 421, 108 S. W. 808, Railway v. Hamon, 173 S. W. 613, Railway v. Holmes, 177 S. W. 505, Railway v. Gatewood, 185 S. W. 934, or Railway v. James, 190 S. W. 1139. In those cases the questions of diligence, care, and negligence were passed upon by the witnesses, and the courts properly condemned it. The distinction between the evidence elicited in this case and that condemned in the cited cases is clearly drawn in a number of cases. Railway v. Drahn, 163 S. W. 330; Railway v. Bogy, 178 S. W. 577; Railway v. Meyer, 155 S. W. 309; Railway v. West, 149 S. W. 206. We are convinced that the evidence was legitimate and proper, and do not feel disposed to extend the scope of the Roberts Case and those cases following it. In the case of Railway v. Hahn Packing Co., 197 S. W. 1146, it was held that the following question was not erroneous:

"Please tell the jury what the actual cash market value of the first shipment of cattle of 29 head that went out on June 1st would have been per hundred pounds had the same been carried with reasonable dispatch and without any rough handling."

The Roberts Case is discussed in the opinion by Judge Talbot and the subject thoroughly handled. It effectually disposes of the contention in this case.

[2] The second assignment of error is overruled. Gibbons testified that there was a market for the kind of horses that he ship-

---

ped at Atlanta at that time. There was the testimony of Jett, a witness for appellant, that tended to show that there was a market for horses in Atlanta. It was not error to permit appellee to testify as to what the market value of the horses was in the condition in which they were delivered at Atlanta.

[3] The third assignment of error cannot be sustained. It was not error to charge the jury that the measure of damages was the difference in value of the animals in Atlanta had they been properly and expeditiously transported and their market value in the condition in which they were delivered. If there was testimony tending to show there was no market value for the animals in Atlanta, appellee, and not appellant, would have been injured had the jury found there was no market value.

[4, 5] The suit in this case was filed within less than 91 days after the animals were damaged, and the agent of the initial carrier, with whom the contract was made by appellee, was served with citation in less than 91 days. It is a settled question in Texas that the filing of suit and service of citation complies with the requirement of notice in the contract, if such requirement be valid. Appellants admit that the Supreme Court and Courts of Civil Appeals of Texas have decided directly against their theories and contention. Phillips v. W. U. Telegraph Co., 95 Tex. 638, 69 S. W. 63; Railway v. Hawley, 58 Tex. Civ. App. 143, 123 S. W. 726; Railway v. Davis, 50 Tex. Civ. App. 74, 109 S. W. 422; Railway v. Boger, 167 S. W. 767; Railway v. Neale, 176 S. W. 85. The citation gave "definite written notice" of the claim to an agent of appellants. We do not feel disposed to place this court in conflict with the Supreme Court and three Courts of Civil Appeals, which we would be compelled to do in order to sustain the contention of appellants. Notice to the initial carrier with whom the contract was made was notice to the connecting carriers. The connecting carriers cannot claim the benefits of the contract without assuming the burdens arising from it. The contract only provides for notice to the agent of the Galveston, Harrisburg & San Antonio Railway Company. The fourth, fifth, sixth, seventh, eighth, and ninth assignments of error are overruled. If the shipment was not a through one, and each carrier was independent of the other, then none but the initial carrier had a contract, and the connecting carriers had no right to notice. Grayson County Bank v. Railway Co., 79 S. W. 1094.

[6] The horses were placed in the shipping pen on February 2, 1916, and allowed by the initial carrier to remain there for 26 hours, the only reason for the delay given being that "it was cold and dark when the train came, and they decided to let the hors-es go until to-morrow; that is, the following day." The negligence began before the shipment was started on its way. The trip should have been made in from 34 to 36 hours; it was actually made in over 100 hours, or in other words, there was a delay of about 65 hours, considerably over one-third of which took place on the line of the initial carrier. The evidence is sufficient to sustain the verdict against the initial carrier, as well as the connecting carriers.

The judgment is affirmed.