The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

LATTIMORE, Judge.

■■ In the light of appellant's motion for rehearing we have carefully reviewed the facts and the authorities bearing on the propositions laid down. The uncontroverted testimony showed appellant in possession of whisky at, or just before, his arrest, and also showed his movement from a fence line toward a road just before the officers came upon him. Where he had started or was going to with said whisky is not made to appear, for when the officers hailed him he threw it down. One in possession of whisky who moves from place to place is a transporter. Riddle v. State, 109 Tex. Cr. R. 258, 4 S.W.(2d) 56; Wade v. State, 103 Tex. Cr. R. 628, 281 S. W. 1049. When the transportation has begun, the offense is complete, even though the destination be not reached. Johnson v. State, 98 Tex. Cr. R. 268, 265 S. W. 588, and authorities cited.

■ It is made to appear that in his closing argument the state's attorney asked the jury not to give appellant the minimum penalty. Complaint was made of this because of the fact that no reference had been made to the penalty in the opening argument. We do not think the matter calls for reversal of this case. It is very doubtful whether it could in any event be held to be a matter in argument comprehended by the rule laid down for district courts in 142 S. W., under the head of Court Rules, which seems to require that the attorney for the plaintiff in opening the case argue the whole case. We have never held any such rule applicable in criminal cases, and could not lay down or make a general rule that would fit all cases. The cases cited by appellant are civil cases, and upon their facts seem to be sustained, but this court would decline to reverse a criminal case for no greater reason than that the state's attorney—who had said nothing about the penalty in his opening argument—in his closing argument asked the jury not to give the accused the minimum penalty.

The motion for rehearing will be overruled.

## TEXAS & N. O. R. CO. v. CHURCHILL.

No. 2637.

Court of Civil Appeals of Texas. Beaumont.
Oct. 11, 1934.

Rehearing Denied Oct. 17, 1934.

Baker, Botts, Andrews & Wharton, of Houston, and Procter, Vandenberge, Crain & Vandenberge, of Victoria, for appellant.

Hull & Oliver, of San Antonio, for appellee.

WALKER, Chief Justice.

Appellee, R. E. Churchill, was in the employment of appellant, Texas & New Orleans Railroad Company, as a brakeman. On or about the 16th day of January, 1932, as appellant's train was moving out of the town of Beeville, appellee, in the discharge of his duties as brakeman, tried to board the caboose of this train by seizing the handholds on the caboose prepared and placed there for his use. As he seized the handholds, one of them gave way. He alleged that the defective condition of the handholds caused him to fall to the ground and to suffer the physical injuries for which this suit was brought. Appellee alleged his employment by appellant and the other facts stated above, and specially pleaded the defects in the handholds as follows: "That the said hand-hold was in a defective condition and came loose, was not properly screwed down and was not securely fastened with bolts, screws or nuts, and that the bolt came out or loose, and same was attached to defective wood and was in a general defective condition, and really amounted to no hand-hold at said place at all; that to have said hand-hold in said condition was negligence and such directly caused or directly contributed to the accident and plaintiff's injuries."

Appellant answered by general demurrer and general denial. The case was tried to a jury, and, after overruling appellant's motion for an instructed verdict, the court submitted the following issues to the jury: (1) As to whether appellant failed to have a secure handhold on the right rear end of the caboose upon the occasion in question; (2) as to whether such failure directly caused the accident; (3) as to whether such failure directly caused appellee's injuries; (4) as to whether appellant failed to have a sufficient handhold on the right rear end of .the caboose upon the occasion in question; (5) as to whether such failure directly caused the accident; (6) as to whether such failure directly caused appellee's injuries; and (7) as to the amount of damages.

Issues 1 to 6 were each answered in the affirmative, and the answer to the seventh issue judgment was entered on the verdict in favor of appellee for the sum of $13,812.50, from which the appeal was regularly prosecuted to the San Antonio Court of Civil Appeals, then transferred to this court by orders of the Supreme Court.

█ Appellee's petition was not subject to the general demurrer on the ground that he failed to allege that, at the time of his injury, appellant was engaged in either interstate or intrastate commerce. The petition alleged the facts showing that appellant was engaged in intrastate commerce; thus it was alleged: "Plaintiff would respectfully represent that on said date along about two o'clock in the afternoon in the town of Beeville, Texas, while in the performance of his duties as a brakeman for the said defendant he was in the act of boarding or getting on the caboose of the train upon which or with which he was working at the said time, and while said train was beginning to move out of the town of Beeville or moving along the railroad track, said train having just begun to start, he grabbed or took hold of the hand-hold on the. side of the caboose with his right hand and his left hand took hold of the hand-hold on the end side of the caboose, the said hand-hold which he took hold of on the end side being placed there for the safety of the employees of the defendant, and at said time said end side hand-hold gave way and caused plaintiff to fall on the ground on rocks or hard surface and thereby injured his back and heart."

In 28 Tex. Jur. 382, § 223, subject Master and Servant, the following rule is announced: "However, unless the petition discloses that the suit is within the purview of the federal statute, there is no sufficient allegation of a cause of action thereunder, and the suit will be treated as one at common law or under statute law of Texas."

1031

In support of this rule the text cites the two following cases, writs refused in both cases: Missouri, K. & T. Railway Co. v. Hawley, 58 Tex. Civ. App. 143, 123 S. W. 726; Missouri, K. & T. Railway Co. v. Neaves, 60 Tex. Civ. App. 305, 127 S. W. 1090, 1091. In the Neaves Case the court said, citing its former opinion in the Hawley Case: "We were then, and are now, of the opinion that if, in a case of this character, brought in a state court, the plaintiff's petition does not disclose that the suit is based upon the federal statute, under consideration, it must be said that he is not seeking to recover for an injury received while engaged in interstate commerce, and the sufficiency of his petition must be tested by the state law."

In 45 C. J. 1061, it is said: "Sufficiency of Allegation: The sufficiency of the pleading of such duty must be determined upon the facts from which the duty is deduced; in order to be sufficient the duty of care on the part of defendant must be shown by an allegation of facts from which the duty follows as a matter of law. It is sufficient to state facts from which the duty so arises without showing the details; and if such facts are stated it is not necessary to allege the manner in which the duty was imposed. So also, if the facts stated show a legal duty of care, an express allegation of such duty is not necessary; and if such an allegation is made it may be treated as surplusage, for if the particular facts stated raise the duty, the allegation is not necessary, and, if they do not, it is unavailing. A mere general allegation of the existence of such duty, without a statement of facts from which the duty arises, is insufficient, as being a mere statement of a legal conclusion."

Also in 39 C. J. 937, the following rule is announced: "Where the allegations bring the case within the statute, it will be construed as a statutory, not a common-law, action, unless the statutory remedy is merely cumulative and a common-law cause of action is also stated; and it is not necessary to recite or make specific reference to the statute, nor expressly allege that the action is based thereon."

In this case no reference was made either to the federal or state statute, but, as facts were pleaded sufficient to invoke the state statute, it must be said that appellee was invoking the state statute; and as the facts further show that appellant, at the time appellee was injured, was engaged in intrastate commerce, the petition was not subject to the general demurrer nor was appellant entitled to an instructed verdict under this proposition.

Nor was appellant entitled to an instructed verdict on the theory that, under the evidence, appellee was not injured in the manner pleaded by him; that, even if he was caused to fall in the manner pleaded by him, he suffered no injury thereby; that his condition was the result of syphilis and not the fall; nor were the answers to questions 1 to 6 without support in the evidence and so against the great weight of the evidence as to be clearly wrong; nor were the damages assessed excessive. It would serve no useful purpose to review in detail the testimony on these issues. Briefly summarized, the testimony of appellee himself and of both his lay and expert witnesses fully supports his contention that he was seriously injured. We quote as follows from the testimony of appellee, questions and answers reduced to narrative:

"When I got to Houston they carried me to the Texas and New Orleans and the Southern Pacific Hospital. They put my cot there, and after while they came around—some fellow came around with a big light and put it on my back and left it there about 20 or 30 minues. Two doctors looked me over then. They didn't do anything but just looked at me there and looked at my back. I left there that night and went to San Antonio. I was suffering pains in the lower part of my back, around just a little below my belt, and in my legs. When I got to San Antonio I went to bed, and the next morning about seven o'clock I 'phoned for Dr. Boshardt, a railroad doctor in San Antonio, whom two or three of my neighbors recommended to me. He came to see me about 10:30 or 11 o'clock. He looked me over and said he would be back later and put some tape on me. He came back about two or three hours later and put adhesive tape on me. He came back in about three or four days and talked to me about how I was getting along, but didn't do anything to me then. That tape stayed on there, I guess, about five or six days and it got loose and sweaty and moving around and irritating me, and I either 'phoned Dr. Boshardt and asked him could I take it off or he came out and took it off himself, I am not sure which. Dr. Boshardt came back to see me a few days after that, but during that time I suffered much with my heart and back and legs. The lower part of my back hurts me most, it is sore and hurts me all the time; my heart feels heavy and has pains, and when I walk I get out of breath if I walk very far at one

time; my left leg hurts me all the time—both of my legs hurt, but the left is the worst, and I feel dizzy all the time and have been ever since I got that fall. I don't sleep well at nights and never have slept well, and have to take medicine to try to make me sleep. All I know that bothers me is my heart, my back, and my legs. Dr. Boshardt taped me up again with a brace on the lower part of my body. I wore this about five or six days."

The testimony of appellee's expert witnesses, as well as his own testimony, was to the effect that he did not have syphilis. Appellee testified that for many years prior to his injury he was in excellent general health and regularly performed his duties as brakeman. Appellant's witnesses testified that appellee had syphilis and that his condition was the result of syphilis, but the weight of their testimony was for the jury. The testimony offered by appellee fully supported his allegations as to the condition of the handhold, and that his fall was caused thereby.

■ Propositions 4 to 21, inclusive, are grouped and present the contention that the court committed reversible error in receiving certain testimony. The testimony thus objected to may be summarized as follows: Appellee's witness, Dr. W. S. Hanson, testified that appellee gave him a history of his case; this witness gave an affirmative answer to the following questions: "Did he (appellee) tell you what had happened to him?" "Did he tell you about a wreck he was in?" Appellee told him that "he fell on June 16, 1932." Appellee asked this witness the following question: "Based upon that what the patient has told you, and upon your study and examination of his condition, what, in your opinion, is the cause of Mr. Churchill's present condition?" to which the witness replied: "The cause, in my opinion, of his present condition is due to the fact that he suffered a fall, striking on the lower part of his spine, which, attended with the unnatural reflexes and muscular exertions made at that time, dilated this large blood vessel causing the condition which is now present. With reference to his back, I think his back injury was due to direct force applied to the lower part of the spine."

This witness gave the following definition, answering appellee's question, of the term "direct force" as used by him in the answer just quoted above: "A trauma due to the fall."

Appellee's witness, Dr. C. F. Cotham, was asked and answered the same general questions asked Dr. Hanson and gave the same general answers, with the following addition: Answering question asked by appellee's counsel as to the condition of appellee, this witness said:

"He has what we call a contusion, a contusion of this cord.

"Q. What do you mean by a contusion? A. Well, by a contusion we mean that he has had an injury to this cord, and he probably had a hemorrhage—in my opinion, he did have a hemorrhage, a considerable hemorrhage—and with this hemorrhage there was a clot formation, and with every clot formation there is a serum formation, which is the white portion of the blood. This serum no doubt has been absorbed, and with the absorption of the serum there has been adhesions formed between the cord and the covering of the cord, together with pressure upon the nerve roots.

"Q. What, in your opinion, is the cause of his condition? A. The injury.

"Q. You mean the trauma? A. Yes, sir."

The testimony of these doctors as to what appellee told them was objected to as being hearsay, self-serving, immaterial, incompetent, prejudicial, and irrelevant; their expert opinions, as to the condition of appellee, were objected to upon the ground that "said testimony was hearsay, a self-serving declaration, and called for a conclusion of the witness based upon self-serving declarations made by appellee and hearsay testimony, and same was incompetent, irrelevant and prejudicial testimony."

The record shows that these doctors asked appellee the history of his case in connection with their professional examination of him. The statement made by appellant does not show these doctors were permitted or asked to give in detail the statements made to them by appellee. The statement above reflects the testimony objected to. The following proposition by the Supreme Court in Pullman Palace Car Company v. Smith, 79 Tex. 468, 14 S. W. 993, 994, supports the admission of this testimony: "We find no error in the action of the court in permitting the physician who attended Mrs. Smith during her illness to state what she told him while he was treating her, about her exposure at the place where she left the train, in connection with his own opinion as to the cause of her sickness. The statement was made as the basis of the doctor's opinion, and not as independent evidence to establish the fact of exposure; even had the latter been the purpose, it would furnish no ground for the reversal of the judgment, as both the wife and the hus-

band had, as witnesses, themselves fully stated every fact upon the subject, and there was no opposing evidence with regard to the circumstances attending their leaving the train, and the exposure that followed it." See, also, Gulf, C. & S. F. Railway Co. v. Brown, 16 Tex. Civ. App. 93, 40 S. W. 608, 609; A., T. & S. F. Railway Co. v. Click (Tex. Civ. App.) 32 S. W. 226; Railway Co. v. Rose, 19 Tex. Civ. App. 470, 49 S. W. 133; Gulf, C. & S. F. Railway Co. v. Moore, 28, Tex. Civ. App. 603, 68 S. W. 559; Railway Co. v. Demsey, 40 Tex. Civ. App. 398, 89 S. W. 786, 787; Runnells v. Railway Co., 49 Tex. Civ. App. 150, 107 S. W. 647, 648; Texas Employers' Insurance Co. v. Knouff (Tex. Civ. App.) 297 S. W. 799, 801; Zurich General Accident & Liability Insurance Co. v. Kerr (Tex. Civ. App.) 54 S.W.(2d) 349.

On the theory that appellee's cause of action was at common law and not under the Federal Safety Appliance Act (45 USCA § 1 et seq.), or article 6386, R. S. 1925 of the state statutes, appellant contends that the court erred in refusing to submit the issue of contributory negligence. As the suit was not a common-law action, this proposition is overruled; that is to say, since the theory upon which the proposition is based has no basis, the proposition must fall.

■ Propositions 25, 26, and 27 are grouped and complain of the following portion of the court's charge written in italics:

"In estimating such damages, if any, you may take into consideration loss of time, if any, up to the present and physical and mental pain, if any, suffered or to be suffered by said plaintiff as the direct result of such injuries, if any. And if you find from the evidence that the plaintiff's injuries, if any, will impair his capacity to work in the future, you may include in your estimate such an amount as you may believe from the evidence, if paid now, would reasonably compensate him for such impaired capacity to work in the future directly resulting from such injuries, if any.

"In estimating such damages, if any, you must exclude from your estimate any compensation for impairment, if any, and suffering, if any, of said plaintiff, which may be due solely or partly to ailments or physical conditions, if any, which he may have had before the accident, *but if you find from the evidence that the injuries, if any, have aggravated any ailments of physical, conditions, if any, which plaintiff may have had prior to the time of the alleged injuries, then you may consider in your estimate such aggravation, if any.*"

"And if you find from the evidence that since the time of his alleged injuries the plaintiff has suffered with ailments independently of such injuries, if any, you will exclude from your estimate any suffering, if any, due solely or partly to such subsequent ailments."

Though appellee did not specifically allege "aggravation" of pre-existing injuries, he did plead that he was in good health at the time he was injured. Appellant's general denial controverted the issue as to appellee's general health. That appellee's petition was sufficient to raise the issue of "aggravation" of injuries is sustained by the following rule announced by 13 Tex. Jur. 359: "Where injury to the person is affected by pre-existing disease or infirmity, the plaintiff in a suit to recover damages from the wrong-doer need not embody in his petition an allegation with respect to this abnormal physical condition. Where he avers that he was in good health at the time of his injury, the general denial puts this fact in issue. Nor need the defendant, in case he desires to introduce evidence as to the plaintiff's physical condition at the time of the injury, have pleaded the matter in his answer."

Appellee testified he did not have syphilis, but appellant's doctors put that issue in the case. That appellee received a fall at the time in question was not controverted, and that he suffered serious physical pain as a result of the fall was shown by his evidence. Though the theory of appellant was that appellee's condition was the result of syphilis, all the testimony was to the effect that he was an able-bodied man, regular in the discharge of his duties, before his injury. This testimony raised the issue that, if the syphilitic condition testified to by appellee's doctors existed, it aggravated the injuries caused by the fall. The following authorities support the court's charge against appellant's exception: Texas Jurisprudence, vol. 13, § 204, pp. 359, 360; § 269, p. 462; Galveston, H. & H. R. Co. v. Hodnett (Tex. Civ. App.) 155 S. W. 678; St. Louis Southwestern Ry. Co. of Texas v. Johnson, 100 Tex. 237, 97 S. W. 1039; Ft. Worth & D. C. Ry. Co. v. Morrison (Tex. Civ. App.) 139 S. W. 884; Galveston, H. & S. A. Ry. Co. v. Coker (Tex. Civ. App.) 135 S. W. 179; Texas & P. Ry. Co. v. Thompson (Tex. Civ. App.) 286 S. W. 536; S. A. & A. P. Ry. Co. v. Corley, 87 Tex. 432, 29 S. W. 231.

■ We overrule appellant's contention that each of the issues Nos. 1 to 6 should have been so worded as to place the burden of proof upon appellee. The trial court gave the following charge on burden of proof: "You are further instructed that the burden is upon the plaintiff to establish by a preponderance of the evidence the affirmative of Issues Nos. 1 to 6, inclusive, and the amount inquired about in question No. 7."

The following was the only exception urged against this charge: "Because same imposes upon defendant a burden heavier than the law imposes upon it in a case of the character as presented by plaintiff in his petition in this case."

This exception is too general, and in no way called the attention of the trial court to the point now made by its propositions. Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.