Charles N. HOKE, Petitioner,

v.

Tom F. POSER, Respondent.

No. A–10160.

Supreme Court of Texas.

Nov. 25, 1964.

---

O. Joseph Damiani, Houston, Long, Aronson & Coleman, Austin, for petitioner.

Tynes & Turk, Raymond L. McDermott, Houston, for respondent.

CULVER, Justice.

The respondent, Poser, filed the statement of facts in the Court of Civil Appeals on July 12, 1963, and the Court set the case for submission on February 6, 1964. Thereafter, on December 27, 1963, he filed his brief in the Court of Civil Appeals. At no time prior to the filing of the brief did Poser request an extension of time, nor has he ever alleged or attempted to show any good cause whatsoever for this substantial delay.

The petitioner, Hoke, asserts that the Court of Civil Appeals erred in overruling his motion to strike the brief and to

dismiss the appeal: In support of this contention he cites Rules of Civil Procedure, 414 and 415.[1] Impliedly Rule 414 standing alone would hardly vest in the Court of Civil Appeals any discretion to allow the filing of the appellant's brief more than thirty days after the filing of the statement of facts except upon a showing of good cause. But the two rules must be read together. Rule 415 authorizes the Court of Civil Appeals to dismiss the appeal for want of prosecution when appellant has failed to file his brief in the time prescribed in Rule 414, unless good cause to excuse that failure is shown and the opposing party has not suffered material injury thereby. However the last sentence in Rule 415, by its very clear and unambiguous terms, confers a broad discretion upon the Court to decline to dismiss the appeal in any event. The rule as written probably allows more discretion than the rule makers intended and probably should be amended. It permits quite a variance between the custom and practice of the different Courts of Civil Appeals. For instance, it appears that the Houston Court, due to the large volume of business and the delay thereby incurred in the setting of cases for submission, has, some years since adopted the practice of permitting the appellant, without motion, to file his brief within forty days prior to the date on which the case is set for submission, following which the appellee may file his brief at any time prior to 15 days before submission. While this practice may be very convenient for those lawyers in that Supreme Judicial District, nevertheless it may make for confusion and possibly penalize the unwary whose appeals might be transferred to other jurisdictions. It is to be remembered that a large percentage of cases appealed to the Houston Court are transferred to other courts for decision, where the appeal may be dismissed for failure to file within the time required in Rule 414. So pending any amendment, conformity to the rule as written is to be desired. At any rate the bench and bar are entitled to rely on the clear-cut wording of the rule and accordingly the Houston Court was not required, as a matter of law, to dismiss the appeal for want of prosecution. The point is overruled.

This suit grows out of an automobile collision which happened on July 6, 1960. Poser brought suit against Gene Mohr Chevrolet Company and its salesman, Charles Hoke, and recovered a judgment against Hoke in the sum of $467.50 for personal injuries and doctors and medical and hospital expenses, the company having been exonerated as a result of a jury verdict.

On appeal by Poser, the Court of Civil Appeals reversed the judgment rendered against Hoke, affirmed the judgment that

---

1. Rule 414. "Briefs of each party shall be subscribed by at least one of his attorenys, shall give the post-office address of each attorney whose name is signed thereto, and shall state that a copy of such brief has been delivered or mailed to each group of opposing parties or counsel thereof. Appellant shall file three copies of his brief in the Court of Civil Appeals within thirty days after the filing therein of the transcript and statement of facts, if any, having theretofore delivered or mailed an additional copy to opposing parties of their counsel. Appellee shall file three copies of his brief in said court within twenty-five days after the filing of appellant's brief and at the same time deliver or mail an additional copy to each group of opposing parties or counsel thereof. Any Court of Civil Appeals may by rule permit the filing therein of a less number of briefs. Upon good cause shown, the Court of Civil Appeals may grant either or both parties further time for filing their respective briefs, and may extend the time for submission of the case. The court may also shorten the time for filing briefs and the submission of the cause in case of emergency, where in its opinion the needs of justice require it."

Rule 415. "When the appellant has failed to file his brief in the time prescribed, the appellate court may dismiss the appeal for want of prosecution, unless good cause is shown for such failure and that appellee has not suffered material injury thereby. The court, may, however, decline to dismiss the appeal, whereupon it shall give such direction to the cause as it may deem proper."

Poser take nothing against the Chevrolet Company or its receiver, Phillips, and remanded the cause against Hoke for a new trial solely because of error in the Court's charge.[2] On an examination of the record we are of the opinion that the attack on the Court's charge is not justified and the judgment of the Court of Civil Appeals should be reversed and that of the trial court affirmed.

As a result of the collision Poser claims that his head hit the top of the steering wheel, his left elbow hit the window and he felt a sharp pain in his back a little below the line of the seat belt which was fastened at the time. He was taken to the hospital in an ambulance and an orthopedic specialist examined him. Only his arm was X'rayed, though he complained to the doctor at the time that his back was giving him some pain. He was released from the hospital that day and went home. On July 11th he gave a statement in writing about the accident to the effect that his left arm was injured, his neck also hurt but as far as he knew he was not injured in any other way. He explained that he did not mention his back because the doctor said he could resume his work and had nothing to worry about. He testified that up to July 14th he worked in the office but did not do any lifting because of the pain he was suffering. On that day he went to the field station and helped one of his associates lift an instrument which weighed about 100 pounds. After it was set down he bent over to place some screws in the instrument and that was when he said "I really got hurt," and the pain got worse after July 14th.

Poser pleaded that as a result of this collision he sustained injury to his left elbow, a whiplash injury to his neck; suffered from headaches, and in all probability sustained a protrusion of a lumbar disc. He further pleaded:

"* * * In the event it be shown that your plaintiff had any pre-existing condition, your plaintiff would respectfully show unto the Court and Jury that such pre-existing condition, if any, was neither painful nor disabling, but was aggravated and caused to flare up and become both painful and disabling as a result of the occurrence made the basis of this suit. * * *."

The defendant, Hoke, pleaded in reply in part as follows:

"For further answer herein, this Defendant would further show the Court and Jury that the Plaintiff returned to his regular employment after the accident made the basis of his suit and thereafter, on the 14th day of July, 1960, he received an accidental injury and/or aggravation of his pre-existing back condition while on the job and while acting in the course and scope of his employment for Transcontinental Gas Pipe Line Corporation, which said accidental injury or aggravation of 14th July, 1960, was the cause of any and all medical expenses incurred by him on or after that date and was the direct and proximate cause of any subsequent operation, lost time, impairment of earning capacity, if any, and of all pain and suffering sustained by the Plaintiff from and after the 14th day of July, 1960."

The only medical testimony in the case was given by Dr. Robert C. L. Robertson, a neurosurgeon called by Poser. Dr. Robertson first saw Poser on July 26th. He said that Poser told him that on July 6th he had been involved in an auto collision which caused pain in his back and that the pain continued until July 14th when he picked up the heavy instrument. Dr. Robertson found on examination that Poser had spondylolysis, a congenital condition which would cause pain in his lower back when certain motions occurred. He recommended surgery and performed that operation on August 2nd. The doctor also testified that

2. Poser v. Gene Mohr Chevrolet Co., 377 S.W.2d 732.

probably the shaking up received in the collision was what necessitated the operation; that it was reasonably probable that the collision aggravated the condition of spondylolysis and that since Poser had his seat belt fastened the collision would cause a sudden flection of the low back and is of the type of movement that is likely to produce a rupture to the intervertebral disc. As a result of the collision Poser might have medical expense even to the point of further surgery for fusion. He also testified that it was reasonably probable that Poser's future medical expense as a result of the collision would be about $150.00 a year for the rest of his life and that it would be reasonable to consider his permanent partial disability as being in the order of twenty to twenty-five per cent.

On cross-examination the doctor testified that he could not be sure that the pain Poser suffered resulted from the occurrence on July 6th or July 14th, but in his opinion both the occurrences of July 6th and July 14th aggravated the condition and the automobile collision is the more logical thing that began this train of events. Under this state of the medical testimony the jury could have believed that the operation and the subsequent disability all proximately resulted from the collision of July 6th and it seems but speculation to believe that even if the lifting aggravated Poser's condition it resulted in subsequent aggravation for which the defendant would be liable. It is to be remembered that the testimony showed that Poser suffered from spondylolysis, an incomplete formation of bone that has existed since birth, a record of brutal treatment by his captors during World War II, having been beaten on numerous occasions in the lower part of the back with a rifle butt, and a history of back trouble for a number of years.

The trial court carefully and fully charged the jury to find what sum of money would fairly and reasonably compensate Poser for such reasonably necessary medical and hospital expenses as were incurred by him from July 6, 1960, to the date of this trial or in reasonable probability might be incurred in the future as a direct and proximate result of the injuries sustained by the collision in question. Likewise, the Court gave similar instructions covering compensation for injuries and damages, physical pain, mental anguish and loss of earnings. In addition the Court also gave the following instructions:

"You will not consider as an element of damage, nor allow anything for, physical pain or mental suffering, if any, or lost earnings or loss of earning capacity, if any, or medical expenses, if any, because of any condition or disability to Tom E. Poser which may have existed before July 6, 1960, except in so far as such condition or disability may have been aggravated by the collision in question.

"You are further instructed in connection with such Special Issues that you will not consider as an element of damage, nor allow anything for, any physical pain or mental suffering, if any, or loss of earnings or loss of earning capacity, if any, or medical expenses, if any, because of any condition or disability which may have occurred after July 6, 1960, and which was not proximately caused by the collision in question."

Poser objected on the ground that the instruction does not go far enough and advise the jury that they might allow damages for a condition or disability occurring after July 6th (the day of the automobile collision). He says, in other words, the instruction leaves out the element of aggravation and fails to advise the jury that the accidental injury of July 6th may have made worse, aggravated or flared up some condition or disability suffered by the plaintiff after July 6th, and fails to advise the jury that a subsequent condition or disability may be aggravated by the injury made the basis of the suit. In that connection Poser requested that the following

be added to the said instruction: "Except in so far as such condition or disability may have been or may in the future in reasonable probability be aggravated by the collision in question."

The Court of Civil Appeals reversed and remanded the cause for a new trial holding that the charge of the trial court prevented the jury from considering the fact that the subsequent incident of July 14th may have aggravated the injuries received in the July 6th accident since under the evidence the jury might have concluded "that the accident of July 6th aggravated the conditions existing at the time and created a worse condition upon which the innocent act of July 14th operated, thereby aggravating the injury of July 6th."

 In other words the Court's charge was correct. It just did not specifically call the jury's attention to the matter of subsequent aggravation, which had not been pleaded.

The contention is made that unless subsequent aggravation is specially pleaded the party relying thereon is not entitled to an affirmative submission, nevertheless where the Court assumes to submit it affirmatively there must be a correct submission and that the charge in that respect is incorrect. We do not agree with this proposition. The aggravation spoken in the charge was that of the pre-existing condition caused by the automobile collision. There was no reference in the charge to any subsequent aggravation. The charge allowed recovery for any damages directly and proximately caused by the collision in the past or in the future and points out that there may be more than one proximate cause. The jury, under the evidence, had the right to conclude that the operation and medical expense incurred by Poser were all proximately caused by the collision.

The respondent, Poser, urges that the matter of subsequent aggravation does not have to be pleaded and for that proposition cites the cases of Galveston, H. & S. A. R. Co. v. Coker, 135 S.W. 179, Tex.Civ.App., 1911, wr. ref., and Gulf, C. & S. F. R. Co. v. Brown, 16 Tex.Civ.App. 93, 40 S.W. 608, wr. dism., both of which deal only with the aggravation of a prior condition caused by the accident in question. In our opinion the analogy is not sound. The subsequent aggravation, if any, is brought about by an intervening cause. It may be the act of the plaintiff himself or of some third person.

In City of Port Arthur v. Wallace, 141 Tex. 201, 171 S.W.2d 480, the only case discussed by the Court of Civil Appeals as dealing with the question of subsequent aggravation, approves the principle of law governing the matter as stated in 15 Am. Jur., Damages, § 83. In that case the later innocent act of the minor, for whose benefit the suit was brought, combined with the injury sustained in the previous automobile collision, concurred in bringing about the loss of the eye for all of which recovery was allowed on the ground of subsequent aggravation. But in that case the matter was not only pleaded but submitted to the jury affirmatively. No cases involving an alleged subsequent aggravation have come to our attention where the intervening cause was not pleaded. On the other hand we have found no authorities which hold that the pleading is necessary. Rules 277 and 279 both provide that when the Court submits a case to the jury on special issues he shall submit the controlling issues made by the written pleadings and the evidence.

We point out that even on the necessity of pleading to support aggravation of a pre-existing condition the state jurisdictions are rather closely divided.[3]

 Liability for aggravation brought about by an independent act does not arise as a matter of course. The foregoing

---

3. See Varley v. Motyl, 139 Conn. 128, 90 A.2d 869, and annotation following, 32 A.L.R.2d 1439.

cited section from American Jurisprudence points up the applicable rule as follows: "The original wrongful act is deemed the proximate cause of the entire injury (including subsequent aggravations) provided the act of the injured person which aggravates the injury is within the course of conduct of a reasonably prudent person under all the circumstances." Likewise, where the intervening act is that of a third party, plaintiff may recover for aggravation of his injuries brought about by improper medical treatment unless he was negligent in selecting his medical advisor. Galveston, H. & S. A. R. Co. v. Miller, 191 S.W. 374, Tex.Civ.App., er. ref.; Hicks Rubber Co. v. Harper, 131 S. W.2d 749, Tex.Civ.App., er. dism., 134 Tex. 89, 132 S.W.2d 579.

We believe that the charge followed the pleadings and the evidence in this case and allowed the plaintiff to recover fully for the disc operation, disability and pain and suffering that followed the July 6th collision, if the jury believed that they were proximately caused by that accident.

We therefore hold (1) that the Court of Civil Appeals did not err in overruling petitioner, Hoke's, motion to strike respondent's brief, and for dismissal of respondent's appeal for the reason that the matter lay within that court's discretion; (2) that a claim of subsequent aggravation dependent upon an intervening cause and brought about by the plaintiff or some third person should be pleaded in order to authorize the trial court to instruct the jury on that matter; (3) that the Court of Civil Appeals erred in its reversal of the case on the ground that the charge given by the trial court was erroneous.

The Court of Civil Appeals' judgment reversing the cause for a new trial is reversed and the judgment of the trial court is affirmed.

STEAKLEY, Justice (dissenting).

I agree with the analysis by the Court of Civil Appeals of the charge of the trial court, and of its holdings, with respect to the element of subsequent aggravation. The Court of Civil Appeals correctly recognized that the jury could and would reasonably conclude from the charge that aggravation by the subsequent injury could not be considered. In my opinion, such was subject to consideration by the jury where submitted affirmatively, as here, without objection from the opposing party, and where the incorrect manner of submission was sufficiently pointed out by the other party. I would therefore affirm the judgment of the Court of Civil Appeals.

CALVERT, C. J., joins in this opinion.