**Richard THATE, Appellant,**

v.

**TEXAS & PACIFIC RAILWAY CO., Appellee.**

**No. 20104.**

Court of Civil Appeals of Texas, Dallas.

Jan. 23, 1980.

Rehearing Denied Feb. 28, 1980.

**594**

Weldon Parkhill, Grand Prairie, Oscar Mauzy, Dallas, for appellant.

Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellee.

Before AKIN, ROBERTSON and HUMPHREYS, JJ.

ROBERTSON, Justice.

This is a suit for personal injuries sustained by Richard Thate, appellant, when, in order to avoid a falling stanchion which was used to stabilize trucks transported by the railroad, he jumped to the ground from a flatbed railroad car owned by appellee, Texas & Pacific Railway Company. Thate sought recovery on the following alternative theories: 1) strict liability under the Federal Safety Appliance Act, 45 U.S.C.A. §§ 1–43 (West 1972 & Supp.1979) and negligence, both pursuant to the Federal Employer's Liability Act, 45 U.S.C.A. §§ 51–60 (West 1972); 2) common law negligence as to a third party, as provided in the Texas Workers' Compensation Act, Tex.Rev.Civ. Stat.Ann. art. 8307, § 6a (Vernon Supp. 1980); and 3) strict liability in tort. The jury found the railroad liable under each theory, but also found Thate negligent on one ground. Accordingly, comparative negligence was assessed at 20% to Thate and 80% to the railroad. After reviewing each party's motion for judgment, the trial court granted the railroad's motion for judgment notwithstanding the verdict and rendered a take-nothing judgment against Thate. By his single point of error, Thate challenges that judgment. We hold that there was evidence of probative value supporting the jury's verdict of common law negligence, and, therefore, that the trial court erred in granting judgment notwithstanding the verdict. Accordingly, we reverse and render.

On January 15, 1975, Thate was employed by Texas & Pacific Motor Transport Company to load and unload trailers on flatbed railroad cars supplied by the railroad. The employees of Motor Transport, while attempting to load a trailer on a particular flatbed car, discovered that one of the stanchions would not lock in its proper position. Normally, when problems arose with the railroad cars, the practice was to contact the railroad to have the problem remedied. Following this practice, the railroad's car repairman was called to repair the stanchion. A chain was used to pull the stanchion up to the proper position and when

the car repairman believed the stanchion had locked in that position, he advised Thate to remove the chain. When Thate complied, the stanchion fell and he was forced to jump off the car to avoid being hit. Thate's injuries were allegedly incurred as a result of this occurrence.

■ In granting a judgment notwithstanding the verdict, a trial court must conclude that no evidence of probative value exists in support of the jury's findings. Therefore, on appeal of such a judgment, a court of civil appeals considers only admissible evidence and inferences tending to support the verdict, and disregards all evidence and inferences to the contrary. *Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648, 649–50 (Tex.1977); *McDonough Brothers, Inc. v. T. C. Bateson Construction Co.*, 575 S.W.2d 397, 398 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.).

### Federal Employer's Liability Act

■ Thate's first ground for recovery was that the railroad was liable under the terms of the Federal Employer's Liability Act, 45 U.S.C.A. §§ 51–60 (1972). The FELA is an exclusive remedy under which railroad employees can recover against their employer for on-the-job injuries resulting from the acts of their employer or other employees. Thate contends that he was entitled to sue under this act because he was a "borrowed servant" of the railroad at the time of the incident. The railroad argues that, as a matter of law, Thate was estopped from claiming he was their borrowed servant because he received benefits under the Texas Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 8307, § 6a (Vernon Supp.1980), on the representation that he was an employee of Motor Transport. After reading the cases cited by both parties, it appears that the only case directly addressing the question of whether receipt of state workers' compensation benefits estops one from suing under FELA is *Barrera v. Roscoe, Snyder & Pacific Railway*, 385 F.Supp. 455 (N.D.Tex.1973), aff'd, 503 F.2d 1058 (5th Cir. 1974), cert. denied, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762

(1975). Barrera prosecuted a claim under the Texas Workmen's Compensation Act and received benefits. Later he filed an action claiming benefits under the FELA, conceding that he was an employee of RSP Railway Equipment Corporation, but contending that he came within the FELA because Equipment Corporation was the alter ego of RSP Railway. The court in *Barrera* concluded that there was no evidence to support the alter ego contention. Additionally, that court made the alternative holding that RSP Railway was entitled to judgment because Barrera was

> estopped to assert a claim against the Railroad under the FELA by reason of his having successfully prosecuted a claim under the Texas Workmen's Compensation Act on account of the injuries involved in this case. That remedy was inconsistent with a claim under the FELA because he had to be an employee of the Equipment Corporation to collect workmen's compensation benefits.

*Id.* at 462. The railroad argues that this holding should control here. Thate argues that a fact issue exists in the present case concerning whether he was an employee of the railroad. As a result, he contends that *Barrera* can be distinguished from the instant case because Barrera specifically admitted he was the employee of Equipment Corporation, thus precluding any issue of fact concerning whether Barrera was an employee of the railroad. We conclude that no fact issue exists in the instant case concerning whether Thate was an employee of the railroad because, by his election to represent himself as an employee of the trucking company for purposes of receiving benefits under the Texas Workers' Compensation Act, Thate is estopped from now claiming that he was an employee of the railroad for purposes of recovering under the FELA.

■ In addition to the federal court's decision in *Barrera*, we find support for the estoppel theory in decisions of Texas state courts. The railroad does not indicate on which theory of estoppel it relies. Equitable estoppel requires a showing of detrimental reliance by the party asserting the

theory; no such reliance has been shown here. Judicial estoppel requires pleadings or statements made under oath; no showing has been made here that such statements were made by Thate. An additional type of estoppel, however, has been employed in Texas. See *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.) (construing *Lomas & Nettleton Co. v. Huckabee*, 558 S.W.2d 863 (Tex.1977)). In *Metroflight* this court concluded that *Huckabee* held that when a party has filed suit against one party and subsequently settled, and later filed suit against another party concerning a related transaction and seeking a remedy based on facts inconsistent with those alleged in the first suit, a species of judicial estoppel is effective to preclude the second suit. This theory is based upon the "principle that a party should not be permitted to abuse the judicial process by obtaining one recovery based first on affirming a certain state of facts, and then another recovery based on denying the same state of facts." *Id.* at 709; see *Johnson v. Bingham*, 251 S.W. 529, 535–36 (Tex.Civ.App.—Galveston 1923), *aff'd on other grounds*, 265 S.W. 130 (Tex.Comm'n App. 1924, judgmt. adopted). The question for us then becomes whether such a situation exists here.

■ To answer this question we examine the theories under which liability is determined for the Texas Workers' Compensation Act and the FELA. In an action to determine which of two subscribing employers is liable for workers' compensation due an employee, Texas courts have applied the borrowed servant or special employee doc-

trine.[1] According to this doctrine the injured worker is held to be the employee of the employer who had the right of control over the details of the work at the time of the injury, and that employer's workers' compensation insurer is liable for the statutory benefits due.[2] E. g., *Associated Indemnity Co. v. Hartford Accident & Indemnity Co.*, 524 S.W.2d 373, 376 (Tex.Civ.App. —Dallas 1975, no writ); *United States Fire Insurance Co. v. Warden*, 471 S.W.2d 425, 428 (Tex.Civ.App.—Eastland 1971, writ ref'd n. r. e.); *Employers Casualty Co. v. American Employers Insurance Co.*, 397 S.W.2d 292, 295 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.). Since this doctrine is also employed to determine liability under the FELA, *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 324, 95 S.Ct. 472, 476, 42 L.Ed.2d 498, 505 (1974), these remedies are inconsistent in that they require affirming in one instance one set of facts (that one is the employee of an employer which is not a railroad) and in another instance, a different state of facts (that one is the employee of a railroad). Therefore, we conclude that, under the facts of this case, receiving benefits under the Texas Workers' Compensation Act is sufficient to estop one from subsequently seeking recovery under the FELA. *Aetna Life Insurance Co. v. Bocanegra*, 572 S.W.2d 355, 356 (Tex.Civ.App.—San Antonio 1978, writ granted); see *Metroflight, Inc. v. Shaffer*, 581 S.W.2d at 710.

### Common Law Negligence

■ We next consider Thate's theory of recovery based on common law negligence. Special issues thirty-seven through forty in-

---

1. Parties to some suits have raised the argument that dual employment exists and thus, recovery may be had, in some form, from both employers. See *Associated Indem. Co. v. Hartford Accident & Indem. Co.*, 524 S.W.2d 373, 376 (Tex.Civ.App.—Dallas 1975, no writ); cf. *St. Claire v. Minnesota Harbor Serv., Inc.*, 211 F.Supp. 521, 523–29 (D.Minn.1962) (dual employment alleged to prevent third party common law negligence liability). Neither party to this action presented the dual employment theory and consequently, we do not consider it.

2. While a party may be the record employee of one employer and a borrowed servant of anoth-

er at the same time, *Kleppe v. Prawl*, 181 Kan. 590, 313 P.2d 227, 229 (Kan.1957); 53 Am. Jur.2d *Master and Servant* § 26 (1970); Restatement (Second) of Agency § 227, Comment b (1957), liability for a specific act lies only against the employer who had the right of control over the employee while he was performing the act in question. See *United States Fire Ins. Co. v. Warden*, 471 S.W.2d 425, 428–29 (Tex.Civ.App.—Eastland 1971, writ ref'd n. r. e.); *Process Eng'r Co. v. Rosson*, 287 S.W.2d 511, 512 (Tex.Civ.App.—Galveston 1956, no writ).

quire whether the railroad's car repairman advised Thate that the stanchion was locked when it was not, whether Thate relied on that statement, and whether such an act was negligence, proximately causing his injuries.[3] In support of these findings is testimony that the car repairman told Thate to take the chain off the stanchion, that the repairman said the stanchion was locked, and that Thate relied on that statement. Other testimony indicated that the repairman was in a position to inspect the locking mechanism or the indicator pins, which protruded until the stanchion locked. This testimony did not indicate, though, whether such an inspection had been made.

This testimony constitutes some evidence to support the jury's finding that the repairman told Thate that the stanchion was locked. The railroad contends, however, that the jury's finding that its repairman acted negligently in making that statement is not supported by the evidence. To determine whether this contention is correct, we must decide under what facts the making of such a statement would be negligence. The testimony showed that the railroad's repairman was called to the scene because the employees of Motor Transport were having difficulty locking the stanchion in an upright position. There is evidence that when this type of problem exists, a proper inspection must be made to determine if the stanchion is locked before an individual in the position Thate was in is told to release the chain holding the stanchion upright.

■ In other words, an individual must have a reasonable belief, based on a proper inspection, that the stanchion is locked, before so advising a party in a potentially dangerous position. The evidence indicates two methods of inspection exist: 1) viewing the locking mechanism, or 2) viewing the indicator pins. Additionally, as the stanchion is being pulled up, a worker can sometimes determine whether it is locked by listening for the sound of the locking mechanism falling into place. Any one of these methods will indicate whether a stanchion is locked. Since the stanchion was not locked when the railroad's car repairman said it was, the jury was justified in concluding that an inspection had not been made or if one had been made, the repairman ignored the results of it. In either event, no basis existed for a reasonable belief that the stanchion was locked.

■ The railroad argues that testimony exists in the record to the effect that the indicator pins may break off and therefore not protrude. Thus, an inspection of them would indicate that the stanchion is locked when it actually is not. The railroad insists that if this was the situation, the car repairman could reasonably have believed that the stanchion was locked, and the making of his statement to Thate would not have been negligence. There was no proof, however, that both indicator pins were in fact broken off. This argument requires a presumption that the indicator pins were not in proper working order. In our view, any presumption in this respect should be the other way. In the ordinary course of things, mechanical devices operate as intended most of the time. The burden to show that a normal inspection would not have revealed the crucial information should be on the defendant railroad. *See Seinsheimer v. Burkhart*, 132 Tex. 336, 342, 122 S.W.2d 1063, 1066 (1939) (presume normality; burden of proof on party asserting otherwise). The facts in this respect were more readily available to it than to Thate. *See Dessommes v. Dessommes*, 505 S.W.2d 673, 679 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.); *Rowe v. Colorado & Southern Railroad*, 205 S.W. 731, 733–34 (Tex.Civ. App.—Amarillo 1918, writ ref'd); 1 C. McCormick & R. Ray, Texas Law of Evidence § 43, at 40 (Texas Practice 2d ed. 1956). The railroad should not be permitted

---

3. The trial court separately submitted special issues as to each act of negligence under both the FELA and the common law theories of recovery. The submission of two sets of special issues, which are substantially the same, is a practice which should be discouraged. Not only does such submission place an undue burden on the jury, but it is likely to cause confusion and result in conflicting findings. *See Holmes v. J. C. Penney Co.*, 382 S.W.2d 472, 473–75 (Tex.1964) (majority and dissenting opinions); Tex.R.Civ.P. 279.

to excuse the failure of its employee to obtain the information that a normal inspection could be expected to reveal by suggesting, without proof, that such an inspection might have revealed nothing because the indicators designed to give him this information might have been defective. Proof of such a defect might have established an additional ground of liability. We conclude that in the absence of any proof on this point, the jury was justified in drawing the inference that if the repairman had looked for the indicator pins, he would have seen at least one of them protruding and would have discerned that the stanchion had not locked. Consequently, we hold that the evidence supports the finding that the repairman was negligent in advising Thate that the stanchion was locked when it was not.

The railroad further disputes this conclusion by relying on a quotation from *Texas Sling Co. v. Emanuel*, 431 S.W.2d 538 (Tex. 1968), as follows:

> It is one thing to imply negligence generally from the happening of an event, but quite another thing, when the defect in an instrumentality is unknown, to infer that the cause of the unknown defect would have been discovered had an inspection been made. In attempting to construct a bridge with these presumptions having no factual basis, the argument seems to run as follows: We do not know the specific cause of the event, but we assume that it was negligent in nature because the resulting event or accident would not have occurred in the absence of negligence and then, having thus established negligence, we supply the previously unknown cause by the simple assumption that there being no other explanation, we will simply infer that the unknown defect would have been discovered had an inspection been made.

*Id.* at 540–41. In *Texas Sling* a presumption was required that had an inspection been made, it would have revealed an unknown defect which caused an accident six weeks later. Our case is distinguishable because the testimony indicates that had an inspection been made, the fact that the stanchion was not locked would normally have been evident. No presumption "that the unknown defect would have been discovered had an inspection been made" is required. Since the record contains evidence in support of the jury's findings on these issues, the trial court erred in entering judgment notwithstanding the verdict.

*Strict Liability in Tort*

■ Thate's third theory of recovery is strict liability in tort. This theory must be considered because of the jury's finding of comparative negligence, which will reduce the amount of recovery if the only theory of recovery is common law negligence. *See* Restatement (Second) of Torts § 402A (1966). Thate contends that a bailment was created when the railroad supplied Motor Transport with railroad cars which were in or intended for interstate commerce. Thate contends that this situation comes within the holding stated in *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975), that when a party "is engaged in the business of introducing products into the channels of commerce, he will be subject to strict liability for physical harm caused by such products if they are reasonably dangerous to the user or consumer whether he sells or leases his product." *Id.* at 800. We cannot agree because a distinction exists between a product employed in interstate commerce and one in the channels of commerce. Channels of commerce implies that a product is placed for use by or sale to the consuming public, while interstate commerce is a term used for purposes of determining the scope of federal regulation. Merely because a product is employed in interstate commerce does not necessarily mean that it is in the channels of commerce.

■ Further, Thate contends that this fact situation established a bailment to which strict liability in tort applies. Our supreme court, expanding on its decision in *Rourke*, recently indicated its unwillingness to extend strict liability in tort to bailment transactions comparable to that involved here. *Armstrong Rubber Co. v. Urquidez*,

570 S.W.2d 374, 376–77 (Tex.1978). *Urquidez* concerned a strict liability claim by the widow of a test driver, employed by an independent testing ground, against a tire manufacturer. The manufacturer supplied, in addition to the tires to be tested, other tires that were mounted on the test vehicles, although they themselves were not being tested. One of these other tires on the testing vehicle blew out causing a crash in which the driver was killed. While the tire that blew out was a model normally sold to the public, the court, in denying recovery, held that it was in the industrial testing process at the time of the accident and therefore, had not entered the stream of commerce.

Although the instant case is distinguishable from *Urquidez* in that the railroad is not the manufacturer of the allegedly defective product, we conclude that this distinction is not relevant here and that *Urquidez* controls this case. In analyzing several out-of-state decisions in which strict liability in tort was extended to bailment transactions, the supreme court in *Urquidez* concluded that each case concerned a bailment incident to the sale of a product or service to the plaintiff, and consequently, the products provided were in the stream of commerce. The court then proceeded to distinguish these commercial transactions, in which strict liability in tort is extended, from industrial transactions, in which it is not. We hold that the bailment in the instant case was not incident to the sale of a product or service, that the railroad never released the railroad car to an ordinary user or consumer within the meaning of the Restatement, and therefore, that the theory of strict liability in tort should not have been applied to this industrial transaction. Accordingly, Thate is not entitled to recover under the theory of strict liability in tort.

### Election

The railroad also contends that Thate is estopped from appealing on all three theories of recovery because the FELA theory, being an exclusive remedy for employees of the railroad, is inconsistent with the other two theories of recovery. Since the doctrine of election of remedies requires election between inconsistent theories, the railroad argues that Thate should have made that election, at the latest, in his motion for judgment and therefore, can appeal only on either the FELA theory or the common law theories, but not both. *Manning v. Christian*, 124 Tex. 517, 522, 81 S.W.2d 54, 56–57 (1935); *Deal v. Madison*, 576 S.W.2d 409, 421 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.); *see Medical Personnel Pool of Dallas, Inc. v. Seale*, 554 S.W.2d 211, 215 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.). We agree with the railroad that normally a party seeking recovery under two inconsistent remedies must elect, before the judgment is rendered, under which remedy he wishes the court to enter judgment. *See Deal v. Madison*, 576 S.W.2d at 421. This doctrine of election, however, is intended for the benefit of the party sought to be bound by the judgment. As a result, that party may waive this benefit if he does not demand it. *Craig v. Buckley*, 218 Cal. 78, 21 P.2d 430, 431 (1933); *Roam v. Koop*, 41 Cal.App.3d 1035, 116 Cal.Rptr. 539, 545 (1974); *Klinger v. Modesto Fruit Co.*, 107 Cal.App. 97, 290 P. 127, 129–30 (1930).

Additionally, the railroad contends that Thate has in fact made an election to pursue only the FELA claims because he listed those claims first in his petition and in his motion for judgment. We find no authority to support this contention. The order in which a party lists its alternative theories of recovery, even if they be inconsistent theories does not indicate a preference to proceed only with the first listed theory, absent an express statement to that effect.

The railroad's second reason for contending that Thate elected the FELA claims is that his motion for judgment necessarily affirmed all the findings of the jury which included a finding that he was a borrowed servant of the railroad, thus limiting his recovery to theories consistent with that finding. We know of no such rule. We conclude that if Thate was required to

make an election during the trial, the railroad waived its right to appeal on this ground by failing to demand or move for such an election prior to judgment.

### Crosspoints

The railroad's first crosspoint deals with an alleged conflict in the jury's findings to negligence special issues submitted under the FELA theory of recovery. Since we hold that appellant has no cause of action under this theory of recovery, we need not address this crosspoint.

The railroad next attacks the trial court's inclusion of the following instruction with the special issue on damages: "Do not reduce the amount in your answer because of any aggravation of the original injury, if the acts of the injured party which aggravated the original injury were within the course of conduct of a reasonable, prudent person under all the circumstances." The railroad contends that submission of this instruction was prejudicial error because Thate had not pleaded aggravation. This point is controlled by the Texas Supreme Court's decision in *Hoke v. Poser*, 384 S.W.2d 335 (Tex.1964), in which plaintiff Poser did not plead aggravation, but requested an instruction to allow the jury to consider that the collision in question may have aggravated or made worse a disability suffered by him after the collision. The trial court submitted instructions prohibiting inclusion of damages due to any disability which occurred after the event sued upon and "which was not proximately caused by the collision in question." The supreme court adopted the rule that " '[t]he original wrongful act is deemed the proximate cause of the entire injury (including subsequent aggravations) provided the act of the injured person which aggravates the injury is within the course of conduct of a reasonably prudent person under all the circumstances.' " In concluding that the original instruction was properly excluded, however, the court held that a claim of subsequent aggravation dependent upon an intervening cause and brought about by the plaintiff should be pleaded in order to authorize inclusion of an instruction. *Id.* at 340. The instruction before us relates to a subsequent aggravation which was not pleaded and, therefore, the trial court may have erred in submitting it. Additionally, the court may have erred in refusing the railroad's requested instruction, based on the instruction that was upheld in *Hoke,* limiting consideration of conditions or disabilities occurring after the date of the accident in question to those proximately caused by that accident. *See id.* at 338.

In order to justify reversal, however, an error must result in such a denial of the complainant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434. As indicated above, the supreme court in *Hoke* held that damages due to subsequent aggravations of the original injury are properly attributed to the original injury if, when the aggravation occurs, the injured person is acting as a reasonably prudent person. Thus, damages due to such an aggravation could properly have been included in the jury's verdict regardless of which instruction the trial court gave. Neither instruction required inclusion or exclusion of damages due to aggravation, and both instructions were proper statements of the law. Since the jury's verdict could properly have included damages that were proximately caused by a subsequent aggravation under either Thate's or the railroad's instruction, and since the railroad has not shown that it was taken by surprise or otherwise harmed by Thate's failure to plead aggravation, the trial court's error, if any, in submitting Thate's instruction and refusing to submit the railroad's instruction was harmless.

The railroad next challenges the evidence supporting the damage award for Thate's future loss of earning capacity and future medical and hospital expenses. As to lost future income, the railroad argues that Thate's expert failed to adequately indicate how he calculated his estimate of lost future income. The details of the calculation, however, are not required. An expert economist should set out the infor-

mation about the plaintiff which has been supplied to him and should testify whether he has fully considered this information in his calculations. A brief description of the method used to calculate the loss and the result should then be given by the economist. Ward, *The Economist in Personal Injury and Death Litigation,* Trial, November 1979, at 60, 63. Any inadequacy in the expert's testimony should be brought out on cross-examination and, if existent, goes to the weight of his testimony. *See Webb v. Jorns,* 488 S.W.2d 407, 410–11 (Tex.1972); *City of Dallas v. Anderson,* 570 S.W.2d 62, 66–67 (Tex.Civ.App.–Dallas 1978, writ ref'd n.r.e.); Silberberg, *Using an Economist to Repair a Broken Carpenter,* BARRISTER, Fall 1979, at 31, 32. Sufficient testimony and factual exhibits exist in this record to support the reasonable probability of this expert's conclusion and from which the jury could properly have arrived at their verdict. *Cf. Bonney v. San Antonio Transit Co.,* 160 Tex. 11, 17, 325 S.W.2d 117, 121 (1959) (error to submit issue to jury when no evidence of earnings prior to injury).

■ As to future medical and hospital expenses, the railroad argues the verdict was erroneous since no evidence was taken on the reasonable value of medical treatment which will be required in the future. The preferred practice, in order to provide the jury with guidelines to arrive at their verdict, is to have the physician testify with reasonable professional certainty about the kind of services that will be required and the reasonable value of those services. This is particularly advantageous when the services which may be required in the future differ from those received in the past. Despite these preferred practices, however, the only requirement to support a verdict on this issue is that there be evidence in the record of the reasonable value of past medical treatment and to establish the probable necessity of future medical treatment. Determination of the expense of future treatment is a matter for the jury to determine in the exercise of their sound discretion under proper instructions from the court. *City of Houston v. Moore,* 389 S.W.2d 545, 550 (Tex.Civ.App.—Houston 1965, writ ref'd

n. r. e.); *Edens-Birch Lumber Co. v. Wood,* 139 S.W.2d 881, 886–89 (Tex.Civ.App.—Beaumont 1940, writ dism'd judgmt. cor.). The testimony here is sufficient to establish the reasonable value of past medical treatment, and that Thate will require medical treatment in the future. Therefore, the jury's finding was proper.

■ The railroad also complains that the jury finding of future medical expenses exceeded the amount for which Thate pleaded, and therefore, recovery should be limited to the amount pleaded. The settled law in Texas is that a judgment must conform to the pleadings. *Socony-Vacuum Oil Co. v. Aderhold,* 150 Tex. 292, 299, 240 S.W.2d 751, 755 (1951); *Longoria v. Atlantic Gulf Enterprises, Inc.,* 572 S.W.2d 71, 76 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); Tex.R.Civ.P. 301. Accordingly, we agree with this contention of the railroad and recovery for future medical expenses will be limited to $121,000, as pleaded. In light of this discussion and our full examination of the contentions and legal authorities cited by the railroad in support of its other crosspoints, as well as a re-examination of the record, all of the railroad's crosspoints are overruled, except as to the modification of damages for future medical expense.

## Conclusion

We conclude that Thate has no cause of action based on strict liability under the Federal Safety Appliance Act, based on negligence under the Federal Employer's Liability Act, or based on strict liability in tort. Nonetheless, Thate does have a cause of action based on common law negligence. Consequently, we must reverse the trial court's entry of judgment notwithstanding the verdict, and, since the evidence has been fully developed and the only error present in the trial court's action was harmless, proceed to render such judgment as the trial court should have rendered. Tex.R. Civ.P. 434. Thate concedes on appeal that the jury's finding of past medical expenses included $429.00 that was not supported by

the evidence. As a result, we arrive at the following figures as Thate's damages:

| | |
|---|---|
| Lost past earnings | $ 65,000.00 |
| Lost future earnings | 852,000.00 |
| Past pain and anguish | 15,000.00 |
| Future pain and anguish | 110,000.00 |
| Past medical expenses | 14,571.00* |
| Future medical expenses | 121,000.00* |
| Gross Total | $1,177,571.00 |
| Comparative negligence | x  80% |
| Net Total | $ 942,056.80 |

* as modified

Accordingly, we reverse and render judgment on the jury's verdict as modified, with interest from April 25, 1979, the date judgment was entered in the trial court.