**WILLIAMS DISTRIBUTING COMPANY a/k/a B.C. Williams Bakery Service, Inc., Appellant,**

v.

**Roy FRANKLIN and Etta B. Franklin, Appellees.**

No. 05–93–00960–CV.

·Court of Appeals of Texas, Dallas.

June 29, 1994.

Rehearing Denied Sept. 6, 1994.

Michael W. Minton, Dallas, for appellant.

Lorenzo Brown, Phillip Lister, John Alan Goren, Dallas, for appellees.

Before KINKEADE, ROSENBERG and MORRIS, JJ.

## OPINION

MORRIS, Justice.

In this personal injury case, Williams Distributing Company appeals a judgment entered on a jury's verdict in favor of Roy Franklin and Etta Franklin. Appellant contends the trial court erred in refusing to allow two of its expert witnesses to testify at trial. It also says the trial court erred in

admitting evidence about future medical expenses. Finally, it contends the evidence was insufficient to support the jury's finding of gross negligence and consequent award of punitive damages.

We first consider whether appellant has shown reversible error in the exclusion of the expert witnesses when it designated but did not call other experts to testify on the same subject matter. We conclude appellant has not made the necessary showing. Next, we examine the evidence properly admitted that does support the jury's award of future medical expenses notwithstanding appellant's complaint that the trial court may have erroneously admitted other evidence about future medical expenses. Because the properly admitted evidence is more than enough, we conclude any error in admitting other evidence about future medical expenses is not reversible error. Last, we consider the elements of proof necessary to show gross negligence as compared to simple negligence. We conclude the Franklins have not shown gross negligence: they have not shown appellant's conduct in storing the seventy-five-pound dolly that fell and hit Roy Franklin created an extreme risk of harm. We also conclude the Franklins' sole cross-point of error complaining about the exclusion of one of their expert's testimony is without merit. Accordingly, we will affirm in part and reverse in part. Before we do, we set forth the background facts in detail.

## FACTUAL BACKGROUND

The Franklins sued appellant alleging a seventy-five-pound dolly injured Roy Franklin when it fell on him while he was making a delivery to appellant's warehouse. The Franklins claimed appellant's negligence in storing the dolly caused the accident. They sought to recover from appellant, among other things, future medical expenses and punitive damages.

Trial initially was set to begin on September 14, 1992. The Franklins served both interrogatories and requests for production on appellant requesting the identities, opinions, and reports of appellant's testifying expert witnesses. On August 14, 1992, appellant filed its fifth supplemental response to the Franklins' interrogatories identifying Gary Smith, Thomas Persing, and Bill Stanfield as expert witnesses in the field of "workplace safety" and John Sartain and Robert May as expert witnesses in the field of "economic matters." Appellant stated that the opinions and reports of Stanfield and May would be provided later, but produced a biographical sketch of May. Five days later, appellant filed its sixth supplemental response to the Franklins' interrogatories identifying yet another expert witness on economic matters.

The Franklins filed an amended motion for sanctions requesting the court to strike appellant's designation of Stanfield and May as expert witnesses because no reports or other documents relating to their opinions were timely produced. After the Franklins filed their amended motion for sanctions, appellant filed its third response to their request for production of documents and produced Stanfield's report. At the hearing on the Franklins' motion for sanctions, the trial court struck Stanfield and May as expert witnesses because appellant had not timely produced any reports or other information about their conclusions and opinions. The trial court did not sign an order prior to trial reflecting its ruling made at this hearing.

The case was not reached on the September trial date and was reset for trial at a later date. On October 30, 1992, appellant filed its seventh supplemental response to the Franklins' interrogatories. In that response, appellant again identified Stanfield as an expert witness on work safety and attached a copy of his report. Appellant also again identified May as an expert witness on economic matters and stated May had not yet prepared a report. In November, appellant filed another supplemental response to the Franklins' request for production and produced a supplement to Stanfield's report. And in December, appellant filed its eighth supplemental response to the Franklins' interrogatories again identifying Stanfield and also adding Maxwell Dow as an expert witness on work safety. Appellant attached copies of these experts' reports to this response. Appellant also again identified May

as an expert on economic matters and attached a copy of his report.

The case proceeded to trial before a jury on January 26, 1993. At trial, Roy Franklin testified he was making a delivery at appellant's warehouse when a dolly fell, hitting him in the back. He stated that after the dolly hit him, Ken Hudson, appellant's warehouse supervisor, said he had told the workers "about leaving that dolly out in the middle of the floor like that." Franklin also testified about the injuries he sustained as a result of being hit by the dolly, the medical treatment he received for those injuries, and his present condition. The parties stipulated to the admission of Franklin's medical records and bills relating to his injuries and the reasonableness of the more than $80,000 in medical charges incurred. The Franklins read portions of Hudson's deposition. Hudson testified the dolly was stored in an open area of the warehouse and was standing upright next to a wall but not leaning against the wall. He saw Franklin walk by the dolly and brush it with his arm. The dolly fell on Franklin after he brushed it. Hudson stated that if the dolly was left standing without being leaned against a wall, it could easily fall if someone hit it.

The Franklins called Gary Smith and Helen Reynolds to testify as expert witnesses. Smith, a work safety expert, testified that the manner in which appellant stored the dolly was negligent. He also stated his opinion that this negligence rose to the level of gross negligence because Hudson was aware of the dolly's presence but had no safety procedures for using and storing it. Reynolds, an economist, testified she prepared a table of figures showing the present value of Roy Franklin's future medical expenses. The Franklins sought to admit the table into evidence. Appellant objected to the Reynolds table based on hearsay. The trial court overruled the objection and admitted the table into evidence. Reynolds then testified about the present value of the future medical costs included in the table. She stated the future medical expense figures in the table were supplied to her by another witness, Charles Armstrong. She did not calculate Franklin's future medical expenses and had

no idea what Franklin's future medical costs would be. Appellant objected on hearsay grounds to Reynolds's testimony about the present value of Franklin's future medical costs. The trial court overruled the objection subject to the Franklins proving future medical costs through the testimony of a doctor. Reynolds said the present value of Franklin's future medical costs was $65,291.

The Franklins also called Charles Armstrong to testify as an expert. He was the regional marketing coordinator for a rehabilitation hospital. He had prepared a report containing figures on Franklin's future medical expenses. Appellant objected to this report on the basis of hearsay. The trial court overruled the objection and admitted the report into evidence. The Franklins questioned Armstrong about the future medical expenses contained in the report. Appellant also objected to Armstrong's testimony about future medical expenses on the basis of hearsay. The trial court sustained this objection. At the conclusion of Armstrong's testimony, the Franklins rested their case. Appellant then made a motion for directed verdict on the Franklins' claim of gross negligence on the ground that there was either no evidence or insufficient evidence to support the claim. The trial court overruled appellant's motion.

After the trial court overruled appellant's motion for directed verdict, appellant attempted to call both Stanfield and May to testify as expert witnesses. The Franklins in response pointed out to the trial court that it previously struck these two witnesses. Appellant argued that the court struck the witnesses because of their untimely designation before a previous trial setting and, therefore, the order striking them could not be carried forward to the new trial setting. The court stated there were many reasons why the witnesses were struck and kept the order in force. Appellant then presented to the court a written motion to lift the order striking its experts. The court held a hearing and denied the motion. Appellant tendered to the court May's deposition for purposes of a bill of exceptions to the trial court's ruling.

Appellant stated to the trial court it would call Maxwell Dow to testify. Dow was one of

appellant's designated experts on work safety. Appellant, however, did not call Dow but called Ken Hudson as its sole witness. Hudson stated that in the ten years he had been employed at appellant's warehouse, the dolly had always been stored in an open area of the warehouse standing upright next to a wall. He said there had never been a problem with the dolly. He also testified it would be impractical to store the dolly either at the end of the warehouse, between the stacks in the warehouse, lying down, hanging on a rack, or near a barricade, light, or warning sign. Appellant rested its defense after Hudson's testimony.

The Franklins then called Dr. Ronnie Shade to testify. He testified he was a medical doctor specializing in orthopedic surgery. He had examined and treated Roy Franklin. He stated Franklin was still experiencing neck and back pain as a result of being hit by the dolly and needed future medical care in the form of another back surgery. He said this surgery would cost around $20,000. He also said Franklin would need rehabilitation and medication for up to a year after the surgery.

The jury returned a verdict in favor of the Franklins. The jury found appellant ninety percent negligent and also found appellant's conduct grossly negligent. In its award to the Franklins, the jury included $65,291 for future medical expenses and $25,000 for punitive damages. The trial court entered judgment on the jury's verdict. Appellant filed a motion for new trial contending the trial court erred in striking its expert witnesses and in admitting Reynolds's and Armstrong's evidence about future medical costs. Appellant also contended there was insufficient evidence to support the jury's finding of gross negligence and award of punitive damages. The day after appellant filed its motion for new trial, it filed a bill of exceptions containing the substance of Stanfield's testimony.

The trial court denied appellant's motion for new trial. The trial court signed an order stating the reasons it struck appellant's experts. Specifically, in its order denying the motion for new trial, the trial court found "the testimony of [appellant's] experts,

Bill Stanfield and Robert May, was properly excluded during trial due to [appellant's] continued abuse of the discovery process ... [and] based on [appellant's] failure to move the court to set aside its original order excluding said testimony prior to the commencement of the trial and prior to the [Franklins'] complete presentation of their case and resting."

## DISCUSSION

In its first point of error, appellant contends the trial court erred in refusing to allow two of its expert witnesses, Robert May and Bill Stanfield, to testify. Appellant argues the trial court struck its experts only because of their untimely designation before the September 1992 trial setting. Appellant asserts the trial court's order striking its experts and excluding their testimony did not carry over to the new trial setting, which was more than thirty days after the previous setting. Appellant relies on *H.B. Zachry Co. v. Gonzalez*, 847 S.W.2d 246 (Tex.1993, orig. proceeding) (per curiam), to support its argument. Appellant also argues the trial court's later order reciting discovery abuse as another reason it excluded the experts is not supported in the record.

■ For purposes of our analysis, we assume without deciding that the trial court erred in refusing to allow appellant's expert witnesses to testify at trial. Given this assumption, appellant must show the error was calculated to cause and probably did cause rendition of an improper judgment. TEX. R.APP.P. 81(b)(1); *Electronic Data Sys. Corp. v. Tyson*, 862 S.W.2d 728, 734 (Tex. App.—Dallas 1993, orig. proceeding). More specifically, when evidence is excluded because of a trial court's application of procedural discovery rules, any error in the exclusion of the evidence requires reversal if the excluded evidence is both controlling on a material issue in the case and not cumulative. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994).

The first part of the *Mentis* test requires a showing that the excluded evidence is controlling on a material issue. Not all evidence admitted at trial is controlling on a material

issue. It is not enough, therefore, for an appellant to show that the excluded evidence merely relates to a material issue. Conversely, an appellant is not required to show the excluded evidence would be conclusive evidence proving or disproving a material issue in dispute. *Id.* An appellant need show only that the excluded evidence is *controlling* on a material issue to be decided in the case.

This rule relating to "controlling" evidence is rooted in comparison. The evidence claimed to be controlling on a material issue must be compared with other evidence relating to the same material issue. Moreover, the other evidence to be compared is confined to that which supports the party asserting the excluded evidence is controlling. This is so because an opposing party may have its own contradictory "controlling" evidence on the same material issue in dispute. In our adversary system, however, a party is not normally bound by evidence supporting another party's position on the same material issue. Evidence supporting an opposing party's position on a material issue, therefore, is not to be considered in determining whether another party's excluded evidence is controlling on the same material issue. In this context, for any particular evidence to be controlling on a material issue, we hold the evidence must be of such a nature that it will have greater probative force in the determination of a material issue than other evidence supporting the complaining party's position on that issue.

The second part of the *Mentis* test requires a showing that the excluded evidence is not cumulative of any other evidence introduced at trial, including evidence introduced by an opposing party. Cumulative evidence is evidence that tends to prove what has already been established by other evidence. In this case, the deposition and written report appellant filed as bills of exception reveal the substance of the excluded experts' testimony. A comparison of this proposed testimony with all other evidence introduced at trial shows that neither the testimony of May nor that of Stanfield would be cumulative of any other evidence already admitted in the case. We conclude, therefore, appel-

lant has shown the excluded evidence was not cumulative.

■ Although we conclude appellant has met the second part of the *Mentis* test, appellant still has failed to show the trial court's exclusion of either May's or Stanfield's testimony caused the rendition of an improper judgment. The excluded testimony unquestionably related to material issues in dispute in the case. Appellant designated May as an expert witness on economic matters. His deposition filed as a bill of exceptions reveals that his testimony related to the material issue of damages claimed by the Franklins. As a designated expert witness on workplace safety, Stanfield's testimony related to the material issues of negligence and gross negligence asserted by the Franklins. Nonetheless, we conclude appellant has not shown that either expert witness's testimony was *controlling* on these material issues.

In several supplemental responses to the Franklins' interrogatories, appellant designated more than one expert witness for both economic matters and workplace safety. Although the trial court excluded one witness whom appellant designated for economic matters and another witness whom appellant designated for workplace safety, the trial court did not exclude all expert witnesses appellant timely designated to testify on these matters. Appellant did not call any of these other witnesses to testify.

More significantly, appellant has not shown the witnesses designated to testify on the same matters as the excluded witnesses were unavailable to testify. Here, if May's and Stanfield's testimony were the only evidence available to appellant on the material issues in dispute, it would be the controlling evidence for appellant. Also, appellant has not shown there were differences in the designated testimony of the expert witnesses not called to testify and the experts excluded. Therefore, appellant has not shown comparatively that the testimony of the excluded witnesses had greater probative force than that of its other designated witnesses.

■ In effect, we are unable to compare the evidence supporting appellant's position

on the material issues in dispute to determine if the excluded evidence had greater probative force in determining those issues. Although a party is not required to call to the stand the witnesses it identifies in response to a discovery request, a party who designates more than one expert witness to testify on the same material issue cannot show reversible error in the exclusion of one of those witnesses if it fails to show the witness not excluded either was unavailable to testify or would not give controlling evidence himself. Appellant has failed to make this showing. All appellant has shown is that the excluded testimony related to certain material issues. Therefore, appellant has failed to show the trial court's exclusion of testimony caused the rendition of an improper judgment. We overrule appellant's first point of error.

In its second, third, and fourth points of error, appellant contends the trial court erred in admitting certain evidence about Roy Franklin's future medical expenses. In particular, appellant argues the trial court reversibly erred in admitting the report and testimony of Helen Reynolds and the report of Charles Armstrong. Appellant argues this evidence was hearsay. Even assuming the reports and Reynolds's testimony constituted hearsay as objected to by appellant, which we do not decide here, we cannot conclude any resulting error was reversible error.

■ To obtain reversal of a judgment based on an evidentiary ruling, an appellant must first show the trial court abused its discretion. *Shenandoah Assocs. v. J & K Properties, Inc.*, 741 S.W.2d 470, 490 (Tex. App.—Dallas 1987, writ denied). Then the appellant must show the error was calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). Reversible error usually is not shown in rulings on questions of evidence unless the appellant can demonstrate that the whole case turns on the particular evidence admitted or excluded. *Shenandoah Assocs.*, 741 S.W.2d at 490.

■ To recover future medical expenses, a plaintiff must show there is a reasonable probability expenses accruing from his injury will be necessary in the future. *See Fisher v. Coastal Transp. Co.*, 149 Tex. 224, 227–29, 230 S.W.2d 522, 523–25 (1950). To make this showing, a plaintiff must prove two distinct elements. *See Thate v. Texas & Pac. Ry. Co.*, 595 S.W.2d 591, 601 (Tex.Civ. App.—Dallas 1980, writ dism'd). First, a plaintiff must present evidence that he will incur in reasonable probability medical expense in the future. *See id.* Second, a plaintiff must prove the probable reasonable amount of the future medical expense. *See id.* From the first proof adduced, a jury decides *whether* such expense necessarily will be incurred. A jury determines whether a plaintiff in reasonable probability will incur future medical expense by considering the substance of a competent expert witness's testimony. The expert's testimony does not turn on semantics or on the use of any particular term or phrase, such as "reasonable probability." *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 707 (Tex. 1970); *Insurance Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713 (Tex.1966). From the second proof adduced, a jury decides *what* amount of expense will be incurred. An expert witness, however, is not specifically required to testify about the reasonable amount of the future medical expense.

■ Moreover, a plaintiff may prove the probable reasonable *amount of future* medical expenses from evidence of the reasonable *amount of past* medical treatment. *See Thate*, 595 S.W.2d at 601. This rule presupposes that the probability of future medical treatment results from the injury for which damages are sought. *See Fisher*, 149 Tex. at 227–29, 230 S.W.2d at 523–25; *Edens–Birch Lumber Co. v. Wood*, 139 S.W.2d 881, 886–88 (Tex.Civ.App.—Beaumont 1940, writ dism'd judgmt cor.). Also, there must be a relationship between the injury, the past medical treatment, and the future medical treatment. *See Edens–Birch Lumber Co.*, 139 S.W.2d at 886–88. If the future medical treatment for which probable medical necessity has been shown is not related to the injury *and* is not at least similar in nature to the past medical treatment for which there is competent evidence of a reasonable amount, then the required relationship does not exist. *See City*

of *Rosenberg v. Renken,* 616 S.W.2d 292, 293 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Edens–Birch Lumber Co.,* 139 S.W.2d at 886–88. If there is evidence of this relationship, a jury may find from the reasonable amount of past medical expense the probable reasonable amount of future medical expense. *See Thate,* 595 S.W.2d at 601; *Edens–Birch Lumber Co.,* 139 S.W.2d at 886–88.

■ Appellant has not shown the trial court reversibly erred because appellant has not demonstrated that the whole case turns on the particular evidence we have assumed the trial court admitted in error. *See Shenandoah Assocs.,* 741 S.W.2d at 490. On the contrary, Dr. Shade, a licensed physician, testified Franklin would need additional back surgery at a cost of approximately $20,000. He also testified Franklin would need rehabilitation and medication for up to a year. This testimony was evidence independent of Reynolds's and Armstrong's figures that there was a reasonable probability Franklin would necessarily require future medical treatment and incur expense for it. Furthermore, the trial court admitted into evidence Franklin's medical records and bills showing past medical expenses of over $80,000. Therefore, Dr. Shade's testimony, together with the evidence of the past medical expenses, was sufficient evidence to support the jury's finding of future medical expenses. Accordingly, appellant has not shown that any trial court error in admitting the Reynolds and Armstrong evidence caused the rendition of an improper judgment. We overrule appellant's second, third, and fourth points of error.

■ In its fifth point of error, appellant challenges the sufficiency of the evidence to support the jury's finding of gross negligence and its award of punitive damages. Although appellant designates its fifth point of error as a factual insufficiency complaint, appellant argues in its brief either that the evidence is factually insufficient or that there is no evidence to support the jury's finding of gross negligence. The controlling consideration is not whether the point of error uses the proper terminology but whether the point is based upon and related to a particular procedural step in the trial and appellate process and is properly argued. *See Airway Ins. Co. v. Hank's Flite Ctr., Inc.,* 534 S.W.2d 878, 880 (Tex.1976). Accordingly, we first consider whether there is any evidence to support the punitive damages award. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). We agree with appellant's argument that there is none.

■ A gross negligence finding supporting an award of punitive damages may be upheld on appeal only upon a showing that the defendant's conduct created an extreme risk of harm and the defendant was aware of the extreme risk. *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex.1993). In showing a defendant's conduct created an extreme risk of harm, a plaintiff must show the defendant's conduct created an *extreme* risk with the *likelihood* of serious injury. *Id.* at 327. Evidence of simple negligence is insufficient to prove this element of gross negligence. *See id.*

■ Here, Ken Hudson, appellant's warehouse supervisor, testified that the seventy-five-pound dolly for the past ten years had been stored standing next to a wall in an open area of the warehouse. He said the dolly was stored in this manner on the day of Roy Franklin's accident. He also testified that it would have been impractical to store the dolly in any other manner. Hudson stated there had been no previous injury caused by the way the dolly was stored. Hudson did say the manner in which the dolly was kept made it easy for it to fall over if it were bumped or hit. Roy Franklin testified that Hudson said to him after the accident that he had told the warehouse workers "about leaving that dolly out in the middle of the floor like that." The Franklins' work safety expert, Gary Smith, testified that the way appellant stored the dolly was negligent and rose to the level of gross negligence because appellant was aware of it and had no safety procedures for storing it.

■ We conclude the evidence does not support the necessary finding that appellant's conduct in storing the dolly in the way it did on the date of Franklin's accident created an extreme risk of harm. Although

Hudson's, Franklin's, and Smith's testimony may be evidence that appellant was *aware* of *some* risk in the way it stored the dolly, the testimony is not evidence that the way appellant stored the dolly created an *extreme* risk with the *likelihood* of serious injury. And Smith's testimony that there were no safety procedures for storing the dolly is not evidence that the way appellant in fact stored the dolly created an extreme risk of harm. Therefore, there is no evidence to support a finding on the critical element of the existence of an extreme risk of harm. The evidence shows only simple negligence in that the dolly, because of its weight and the way appellant chose to store it, foreseeably could fall over if it were bumped or hit and hurt someone, as in fact it did. An act or omission that is merely thoughtless, careless, or not ordinarily risky cannot be grossly negligent. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, —— (1994). We sustain appellant's fifth point of error.

 In their sole cross-point of error, the Franklins contend the trial court erred in refusing to allow Armstrong to testify about the future medical expenses contained in his report because he was qualified to give such testimony. The evidence showed Armstrong was the marketing coordinator for a rehabilitation hospital. His duties involved "provider relations," which included providing referring physicians with records and information on patients' progress. In connection with his efforts to persuade doctors to refer patients to the hospital, he met with approximately five hundred doctors each year to discuss medical costs. He was also a rehabilitation counselor for the Texas Rehabilitation Commission. In connection with this work, he took courses in the medical field taught by medical professionals. Armstrong, however, was not a doctor.

Neither Armstrong's experience in hospital marketing and rehabilitation counseling nor his education in the medical field qualified him to testify about the reasonable probability of the *necessity* of future medical treatment. Only a licensed physician would be qualified to give such testimony in this case. Accordingly, the trial court did not err in refusing to allow Armstrong to testify about future medical expenses. We overrule the Franklins' cross-point of error.

We reverse the trial court's judgment awarding the Franklins $25,000 in punitive damages. Because the trial court should have granted appellant's motion for directed verdict on the Franklins' claim of gross negligence, we render judgment that the Franklins take nothing on their claim for gross negligence and punitive damages. TEX. R.APP.P. 81(c). In all other respects, we affirm the trial court's judgment.